EUGENE F. BEECHER, Respondent, *v.* PRESS PUBLISHING COMPANY, Appellant.

*Libel — when a verdict should be directed for the defendant — effect and necessity of an innuendo — if unambiguous, the question is one for the court, and if not, it is for the jury — proof as to its truth is all that is required — damages, general or special, when recoverable.*

Where the court presiding at the trial of an action of libel holds that the publication when construed according to its natural meaning was not libelous as matter of law, and that the meaning alleged by way of innuendo was not the meaning conveyed, it should direct a verdict for the defendant.

Where the publication is unambiguous and admits of but one sense, the question whether it is libelous is one of law for the court, but where the publication is capable of being construed in a harmless sense as well as in an injurious sense, an innuendo pointing out the meaning which the plaintiff claims to be the true meaning is necessary to the sufficiency of a statement of the cause of action.

The plaintiff is bound by the innuendo, and if the jury negatives such innuendo or the court determines that the words used are not capable of the meaning alleged in the innuendo, judgment must be given for the defendant.

*Semble*, that where the publication purported to give the substance of a letter written by a third person containing imputations upon the plaintiff's conduct, it is not necessary, in order to justify the publication, for the defendant to prove that the third person judged the plaintiff as stated in the publication or that he wrote as therein stated, or " that which had the same substantial meaning as the words which it said he wrote; " it is only necessary to prove the truth of the substantial imputation and not that the third person was truthfully reported.

If the publication is not libelous *per se*, the plaintiff cannot recover general damages, nor can he recover special damages unless the same are alleged and proved.

APPEAL by the defendant, the Press Publishing Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 15th day of May, 1900, upon the verdict of a jury, and also from an order entered in said clerk's office on the 15th day of May, 1900, denying the defendant's motion for a new trial made upon the minutes.

*John M. Bowers,* for the appellant.

*Herbert S. Worthley,* for the respondent.

SEWELL, J.:

This is an action to recover damages for an alleged libelous article in the defendant's newspaper, The *World.* The defendant published of and concerning the plaintiff the following:

"EDWARD BEECHER's BIG HEART.

"There were many who regarded old Dr. Edward as the best and greatest of the Beecher family — the biggest-hearted and broadest minded.

"Fifteen of these admirers, including the Rev. R. R. Meredith, Pastor of the Tompkins Avenue Congregational Church, and S. V. White, of Wall Street fame, gave one hundred dollars each, annually, to Dr. Beecher's support.

"At that time, early in the '90's, the only inmates of the Beecher house, in Macon Street, were the Doctor, his wife and their adopted daughter.

"EUGENE F. BEECHER.

"Eugene F. Beecher, a younger son, married a wealthy Brooklyn girl and lived in a handsome house in Brooklyn; Frederick W. Beecher, the elder brother, was at that time a Presbyterian minister presiding over a church in the northern part of the State.

"'Come to see me at once,' wrote the old Doctor to Dr. Meredith one day, 'I am in sore trouble and need your advice.'

"Dr. Meredith lives at No. 97 McDonough Street, only a short distance from Dr. Beecher's house.

"Within ten minutes of the receipt of this alarming message the kindly pastor of Tompkins Avenue Congregational Church was with his old friend.

"Dr. Beecher then explained that his son Eugene had obtained possession of certain valuable securities belonging to him and had refused to return them.

"Investigation revealed the fact that Dr. Beecher had fallen heir to considerable property, including the Macon Street house, on the death of a relative.

"EUGENE RETURNED SECURITIES.

"Dr. Meredith handled Eugene Beecher without gloves. In a letter to the young man, Dr. Meredith gave him a choice of alternatives in words like these:

SECOND DEPARTMENT, APRIL TERM, 1901..        [Vol. 60.

" ' Return those securities to your father within twenty-four hours or get out of Brooklyn. You can't keep them and continue to live in this city, where your family has held an honorable and distinguished position.'

"The securities were returned. They were all turned over to S. V. White, who handled them to the best advantage for Dr. Edward Beecher, releasing the faithful coterie from further donations."

The complaint is in the usual form, and charges that the matter was false and defamatory ; that it was published with malice, intending to injure the plaintiff in his reputation ; and that the intent and purpose of the matter was to charge and impute against the plaintiff the commission of a crime, in that the effect of said matter and article was to charge the plaintiff with having stolen certain bonds belonging to his father, and that he only returned said bonds because of the threat contained in the letter alleged to have been written by the Rev. Dr. Meredith to the plaintiff. The plaintiff also alleged that by reason of the premises he has been injured in his reputation for honest and upright dealing in the community to his damage in the sum $25,000.

The defendant admitted the publication of the article, but denied that the intent and purpose of the matter was to charge and impute against the plaintiff the commission of a crime, or that the effect of said matter or article was to charge the plaintiff with having stolen certain bonds belonging to his father. The defendant also alleged separate and distinct facts tending to show the truth of the article published in justification and in mitigation of damages.

At the close of the case the defendant asked the court to direct a verdict in its favor, upon the ground " that the article as published is not libelous *per se*, and that it is not subject to the innuendo of the complaint." The court refused, but held that it was not subject to the innuendo of the complaint or " to any construction which makes it accuse him of larceny."

The court charged the jury that the article was not libelous as a matter of law, and that they were not to interpret what was published as charging the plaintiff with larceny. The court also charged that all of the publication was practically true down to the statement of what Dr. Meredith wrote to the plaintiff, and submitted to

the jury whether the publication, so far as it stated what Dr. Meredith wrote was defamatory, whether it was calculated to diminish the man in the esteem of society.

The court charged the jury that when defamatory matter is published it can be justified by proving its truth, and then said: "Have they proved that Dr. Meredith judged the plaintiff as they have said he did? That is where the sting of this libel lies, if it has any, that they said Dr. Meredith, having heard the facts from the plaintiff's father, wrote a letter, the substance of which they give. Having charged that, they could justify it absolutely if they could prove it was true in substance. Now, take Dr. Meredith's evidence on the stand, and if you find from that evidence that their publication in that respect was substantially true, then there there is no case. It is not necessary, of course, that the defendant should prove that Dr. Meredith wrote precisely those words. It would be sufficient if it proved that he did write that in substance, that which had the same substantial meaning as the words which it said he wrote. But under this pleading it is only its truth which will justify it * * *. Was it true, as they stated, that Dr. Meredith having heard the case from Dr. Beecher, was so impressed with the heinousness of what this plaintiff was guilty of that he wrote to him a letter in which he said, ' Return these securities to your father within twenty-four hours or get out of Brooklyn. You cannot keep them and continue to live in this city where your family has held an honorable and distinguished position.' "

It is the law of this State that where the matter contained in a publication is unambiguous and admits of but one sense, the question of libel or no libel is one of law which the court must decide. (*Moore* v. *Francis*, 121 N. Y. 199.) It is equally well settled that where, as in this case, the language is capable of being construed in an innocent and harmless, as well as an injurious sense, an innuendo to point out the meaning which the plaintiff claims to be the true meaning, and the one upon which he relies to sustain his action, is necessary to the sufficiency of the statement of a cause of action. (*Hemmens* v. *Nelson*, 138 N. Y. 517; *Kingsbury* v. *Bradstreet Co.*, 116 id. 211.)

Where a plaintiff by an innuendo gives a construction to the language published, he is bound by it. It becomes a part of the

cause of action stated. He cannot start a fresh innuendo or obtain a verdict on a meaning different from that pointed out in the innuendo. If the jury negative the innuendo or if the court determine that the words used are not capable of the meaning alleged in the innuendo, judgment must pass for the defendant. (Odgers Lib. & Sland. 101 ; Townsh. Sland. & Lib. § 338 ; Newell Sland. & Lib. 629.)

It has been held that where the words are unambiguous and admit of but one sense, if the plaintiff has alleged an innuendo, he cannot fall back upon the natural meaning, but must be nonsuited even though the words have a libelous meaning. (*Butler* v. *Wood,* 10 How. Pr. 222 ; *Westbrook* v. *New York Sun Assn.,* 32 Misc. Rep. 37.) However that may be, the court having held in the present case that the matter contained in the publication when construed according to its natural meaning was not libelous as a matter of law, and that the meaning alleged by way of innuendo was not the meaning conveyed, it is clear that the court erred in refusing to direct a verdict for the defendant.

It may further be observed that to justify the publication it was not necessary for the defendant to prove that Dr. Meredith judged the plaintiff as stated in the publication, or that he wrote as therein stated, or " that which had the same substantial meaning as the words which it said he wrote."

It was only necessary to prove the truth of the substantial imputation and not that Dr. Meredith was truthfully reported. The publication not being a libel *per se,* the plaintiff was not entitled to recover general damages, and as no special damages were alleged or proved, there was no question for the jury on that subject. (*Keene* v. *Tribune Association,* 76 Hun, 488 ; *Woodruff* v. *Bradstreet Co.,* 116 N. Y. 217 ; *Moore* v. *Francis, supra.*)

My conclusion, therefore, is that the judgment and order appealed from should be reversed and a new trial granted, costs to abide the event.

All concurred, except JENKS, J., absent.

Judgment and order reversed and new trial granted, costs to abide the event.