(117 App. Div. 534)

## OUTCAULT v. NEW YORK HERALD CO.

(Supreme Court, Appellate Division, First Department.   February 8, 1907.)

**1. LIBEL—WORDS ACTIONABLE—JUSTIFICATION.**

No one is answerable for comment on the work of an artist, submitted to the public, however hostile it may be, unless he makes misstatements as to material facts, or goes out of his way to attack the artist.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Libel and Slander, § 147.]

**2. SAME—COMPLAINT—INNUENDO.**

Where words complained of as libelous are ambiguous, and the complaint contains no innuendo, which would make them libelous, it fails to state a cause of action.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Libel and Slander, § 206.]

Appeal from Special Term, New York County.

Action by Richard F. Outcault against the New York Herald Company. From an interlocutory judgment overruling defendant's demurrer to the complaint, defendant appeals.   Reversed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Jay & Candler (Robert W. Candler, of counsel), for appellant.

Arthur A. Brown (McDonald De Witt, of counsel), for respondent.

CLARKE, J.   The action is to recover damages for an alleged libel, and is brought by the plaintiff on two alleged causes of action predicated upon two articles published in the New York Herald.   The complaint alleges:

That for more than 10 years the plaintiff was, and now is, an artist and cartoonist of national reputation for ingenuity and skill in his profession, and was and is the originator of the series of comic pictures entitled "Buster Brown and his dog Tige."

That the defendant maliciously composed and published concerning the plaintiff in his said profession the following false and defamatory matter, viz.:

### "Buster Brown's Career.

"All things have their period of growth, flower, and decay, even the subjects chosen by writers and illustrators contributing to the comic section of the Sunday newspaper.

"Readers of the Herald's European edition have been expressing dissatisfaction with recent numbers of the 'Buster Brown' pictures.  A letter to the editor—reproduced in a special cable despatch on another page—explains to the grumbling children that Mr. Outcault has evidently run out of ideas, and, unlike Mr. Gibson, is not willing to attempt something new.

"The European edition has provided its readers with the new and exceedingly amusing little pet 'Nemo' and other illustrated features for its weekly comic section, and their popularity more than compensates for the waning interest in 'Buster Brown.'"

That the facts stated in said publication were wholly false, and that by reason thereof the plaintiff has been injured in his reputation, and in his good name and credit as such artist, to his damage $50,000.

For the second cause of action, that the defendant maliciously com-

posed and published concerning the plaintiff in his said profession the following false and defamatory matter:

"New Features Replace Buster.

"Sere and Yellow Leaf Period Arrives, and the Herald Adopts More Amusing Pets. Compensate in Interest. Letter to European Edition Says Mr. Outcault has Evidently Run Out of Ideas.

"(Special Cable to the Herald, Herald Bureau, No. 49 Avenue De L'Opera, Paris, Sunday.)

"The Herald's European edition publishes the following: Considerable dissatisfaction has been expressed by readers of the European edition with recent numbers of 'Buster Brown.' The following letter, for example, has been received and published:

"'Hotel Lord Byron, No. 16 Rue Lord Byron, Paris, Jan. 10, 1906.

"'To the Editor of the Herald:

"'What is the matter with Buster and Tige, children? I will tell you. Mr. Outcault has evidently run out of ideas and no wonder! But, unlike Mr. Gibson, he is not willing to attempt something new. "The Buster and his Bath" that you saw in the Herald last Sunday was one of the first of the Buster Brown series and appeared in the New York Herald several years ago when Buster was still somewhat raw and crude. This accounts for the difference that puzzled you.                 Granny.'

"Grumblers do not appear to realize that the sere and yellow leaf period must arrive for Buster as well as for all things. The power of the European edition has provided its readers with a new and exceedingly amusing pet, 'Little Nemo,' whose popularity here with young and old alike is boundless.

"Indeed, his adventures in Slumberland, the latest cataclysm provoked by Sammy Sneeze, and the agitated existence of those quaint little creatures, the Tiny Teds, form an amazingly popular feature of the weekly comic section of the European edition that more than compensates for the waning interest of Buster's pranks."

That the facts stated in said publication were wholly false; and that by reason thereof the plaintiff has been injured in his reputation and in his good name and credit as such artist to his damage of $50,000.

The defendant demurred to each of the causes of action set forth upon the ground that the complaint did not state facts sufficient to constitute a cause of action. The learned Special Term overruled the demurrer, and from the judgment entered thereon this appeal is taken.

In neither of the alleged causes of action is there an innuendo which explains the meaning of the words complained of, nor is there any allegation by way of innuendo which points to a libelous meaning. The complaint alleges that the plaintiff is an artist and cartoonist of national reputation for ingenuity and skill in his profession, and was, and is, the originator of a series of comic pictures and cartoons entitled "Buster Brown and his dog Tige." It is clear that when an artist submits his work to the public, such work is subject to criticism, and that no one is answerable for fair comment or criticism thereon. The actor, the artist, and the author submit their professional work to the public, and thereby appeal to the public for support and approval. They must accept with equal equanimity praise and blame so long as the comment is directed at the work itself. Newell on Libel & Slander (2d Ed.) pp. 566, 567; Townshend on Slander & Libel (4th Ed.) § 254; Odgers on Slander & Libel (4th Ed.) p. 202.

This court said, in Battersby v. Collier, 34 App. Div. 347, 57 N. Y. Supp. 363:

"Fair and legitimate criticism is always permitted upon any work of art to which the attention of the public has been invited. * * * However skillful an artist may be, it is not a libel upon him to say that any particular picture of his is not good of its kind. The same rules must be applied to persons in that profession as are applied to persons in every other profession; and nothing can be said to be libelous of a man in his profession except something which degrades or lowers him in his professional character generally; and it is not a libel of one in that regard to say that, in any particular work, he has fallen below the proper standard or has made a failure."

The Court of Appeals said in Triggs v. Sun Printing & Publishing Association, 179 N. Y. 144, 71 N. E. 739, 66 L. R. A. 612, 103 Am. St. Rep. 841:

"An author, when he places his work before the public invites criticism, and however hostile it may be, the critic is not liable for libel provided he makes no misstatement of the material facts contained in the writing and does not go out of his way to attack the author."

The respondent, while admitting the foregoing rule, claims that the articles complained of are not fair criticism of the work of the artist, but are attacks upon him personally, and come within the rule stated in the Triggs Case, supra:

"If, under the pretext of criticising a literary production, or the acts of one occupying a public position, the critic takes an opportunity to attack the author or occupant, he will be liable in an action for libel."

Respondent claims that the publication complained of falsely states the following material facts, viz.: (1) That the Herald's readers have been expressing dissatisfaction with plaintiff's drawings; (2) that plaintiff had run out of ideas, and was unwilling to attempt something new; (3) that the Buster Brown drawings had reached the sere and yellow leaf period—i. e., that they were no longer meritorious or popular; and (4) that the Herald had substituted therefor a more popular series of drawings. This does not seem to be the obvious and necessary interpretation of the words complained of. They are, in our opinion, susceptible of interpretation as criticism of the particular work known as the "Buster Brown series of pictures." Where an artist has been for a long time engaged in the production of a particular kind of work, criticism of that work upon the ground of sameness can hardly be said to be libelous per se. The articles, to our minds, are confined to a criticism of this series of productions, and did not attack their author in his general capacity or reputation as an artist. The severest part of the publication is perhaps the following:

"'What is the matter with Buster and Tige, children? I will tell you. Mr. Outcault has evidently run out of ideas, and no wonder. But, unlike Mr. Gibson, he is not willing to attempt something new."

That paragraph is certainly susceptible of the interpretation that it was in respect to the Buster Brown series that the plaintiff had run out of ideas. That is to say, in regard to the particular work which he was submitting to the public; and so far from a suggestion that he had run out of all ideas as an artist, it is negatived by the statement that it was no wonder he had, in regard to the particular work, by reason of his long continuance therein, but that he had only to turn to a new line of work, if willing to do so, to achieve renewed success. We are

called upon, therefore, to apply the rule that where the words complained of are capable of two meanings—one defamatory, and the other not—the question as to the sense in which they are used can only be submitted to the jury when there is a proper innuendo pointing to an actionable meaning of which the words are capable:

"It is * * * well settled that where * * * the language is capable of being construed in an innocent and harmless, as well as in an injurious sense, an innuendo to point out the meaning which the plaintiff claims to be the true meaning, and the one on which he relies is necessary to the sufficiency of the statement for a cause of action." Beecher v. Press Publishing Co., 60 App. Div. 536, 69 N. Y. Supp. 895.

The same rule is laid down in actions for slander. Hemmens v. Nelson, 138 N. Y. 517 at page 531, 34 N. E. 342 at page 347 (20 L. R. A. 440). As the words complained of are susceptible of the interpretation as criticisms of the artist's work, and therefore not libelous per se, the complaint fails to state a cause of action by not containing an innuendo, pointing out the particular meaning which the plaintiff now seeks to ascribe thereto.

The judgment overruling the demurrer should therefore be reversed, with costs, and the demurrer sustained, with costs to the appellant, with leave to the respondent, however, within 20 days upon payment of such costs, to serve an amended complaint. All concur.