Lee Shubert and Another, Plaintiffs, *v.* Variety, Inc., Defendant.

Supreme Court, New York County, December 22, 1926.

Libel and slander — libel per se — publication by defendant of news story bearing headline " Shuberts Gouge $1,000 from Klein Brothers " and in body thereof charging that plaintiffs had forced Klein Brothers to pay $1,000 to be released from vaudeville circuit, is libelous per se — words accused plaintiffs of hard dealing and prejudiced plaintiffs in their business — innuendo unnecessary.

The publication by the defendant in its weekly magazine of a news story with a heading " Shuberts Gouge $1,000 from Klein Brothers " and in the body of said story a statement to the effect that said Klein Brothers " had to pay $1,000 for a release from a Shubert production contract " before they could accept a place on another vaudeville circuit, is libelous *per se*, for said publica-

tion accuses plaintiffs of hard dealing and was calculated to injure and prejudice them in their business; the publication being libelous _per se_, no innuendo was necessary.

MOTION by defendant for judgment on the pleadings under rule 112 of the Rules of Civil Practice.

_William Klein_ [_Herbert C. Smyth_ of counsel], for the plaintiff.

_Goldsmith, Goldblatt & Hanower_ [_Arthur F. Driscoll_ and _Edward J. Clarke_ of counsel], for the defendant.

LEVY, J.   It is contended that the complaint fails to state facts sufficient to constitute a cause of action.   The action is one of libel based upon the following article published by defendant concerning plaintiffs:

" SHUBERTS GOUGE $1,000 FROM KLEIN BROTHERS.

" Force Vaudeville Act to Buy Release — Klein and Imhoff Opening for Orpheum.

" Two former Shubert acts were routed by the Orpheum Circuit this week with Roger Imhoff and the Klein Bros.   Both will open at the Palace Chicago, next Sunday with the rest of the Orpheum Circuit to follow.   The Klein Bros. were to have played the last half of this week at Loew's Greeley Square, New York.   J. H. Lubin, Loew's booking chief, let them out of the bill to make the Orpheum opening.   The Kleins had to pay $1,000 for a release from a Shubert production contract this week before they could accept the Orpheum route."

No special damage is alleged.   Defendant argues that even if the word " gouge," contained in the headline of the article, be defamatory, nevertheless the publication, when viewed in its entirety, sufficiently explains the meaning of this word, and indicates that defendant merely intended to convey the thought that plaintiffs _forced_ Klein Brothers to pay $1,000 to be released from their contract with the former and, accordingly, the article did not hold plaintiffs up to hatred, contempt or riducule and could not be said to be libelous _per se_.   Among the definitions of " gouge " contained in the Century Dictionary and Cyclopedia are the following: " to cheat in a bold or brutal manner; overreach in a bargain."   Funk & Wagnall's Standard Dictionary (1916) contains, among others, the following definitions of the word: " to get the better of in a bargain; cheat; overreach."   Webster's New International Dictionary (1910) in part defines the word as follows: " to cheat; to defraud."   The Century Dictionary and Cyclopedia defines the word " cheat " as follows: " to deceive and defraud; impose upon; trick; to mislead; deceive."   It is apparent, therefore, that the headline

" Shuberts gouge $1,000 from Klein Brothers," read by itself, is capable of the construction that it charges plaintiffs with having deceived, defrauded or imposed upon Klein Brothers. Such accusations would clearly hold plaintiffs up to hatred, contempt or ridicule and would obviously be libelous *per se.* Although charging one *orally* with cheating is not slanderous *per se,* the identical charge made in *writing* is libelous *per se.* (See 24 Am. & Eng. Ann. Cas. 1266, 1267.)

Defendant argues, however, that the article must be read in its entirety, and that when so read the word " gouge " is rendered innocuous. It is possible that, read as a whole, the article *may* be given a harmless construction. It does not follow, however, that it *must* necessarily be given such a construction and that it is incapable of an interpretation which warrants the proper inference that it worked injury. As stated in Newell on Slander and Libel (4th ed. 305): " The sting of a libel may sometimes be contained in a word or sentence placed as a heading to it, and the heading is part of the article. The defendant will often be held liable merely in consequence of such prefix, where, without it, he would have had a perfect answer to the action." In *Landon* v. *Watkins* (61 Minn. 137) the court said (at p. 142): " The headlines are an important part of the publication, and cannot be disregarded, for they often render a publication libelous on its face which without them might not necessarily be so. * * * In these headings to publications we frequently find the ' sting.' " In the note to *McAllister* v. *Detroit Free Press Co.* (76 Mich. 338), published in 15 American State Reports at page 347, we find the following: " The head-line of an article or paragraph, being so conspicuous as to attract the attention of persons who look casually over a paper without carefully reading all its contents, may in itself inflict very serious injury upon a person, both because it may be the only part of the article which is read, and because it may cast a graver imputation than all the other words following it. There is no doubt that in publications concerning private persons, as well as in all other publications which are claimed to be libelous, the head-lines directing attention to the publication may be considered as a part of it, and may even justify a court or jury in regarding the publication as libelous when the body of the article is not necessarily so." In *Lawyers' Co-operative Pub. Co.* v. *West Publishing Co.* (32 App. Div. 585) FOLLETT, J., writing the opinion, said (at p. 590): " Defamatory head lines are actionable though the matter following is not, *unless they fairly indicate the substance of the matter to which they refer,* * * *.*" (Italics mine.) (See, also, *Kornblum* v. *Commercial Advertiser Association,* 183 App.

Div. 615.)   Bearing in mind then that the *sting* of the article was contained in the headline and that many of the readers of defendant's publication may not have read the entire article, it is manifest that the most that can be said for defendant's contention is that a question for the jury is presented as to the meaning of the article of which complaint is made.   (See Newell Sland. & Lib. [4th ed.] 305; *Rovira* v. *Boget,* 240 N. Y. 314.)   It is to be noted that the statements contained in the sub-headline: "Force Vaudeville Act to Buy Release," and those in the body that "The Kleins had to pay $1,000 for a release from a Shubert production contract," do not necessarily negative the idea that it is imputed that trickery, fraud or deception were practiced.   There is no statement that the *gouging* consisted merely of plaintiffs' forcing the Kleins to pay for a release.   It is possible to infer that the charge is that the payment was induced not alone by plaintffs' refusal to yield up a release otherwise, but also by deception or fraud.   The fact that the alleged defamatory statement is contained in the headline, together with the further fact that the body of the article does not of necessity negative the libelous meaning of that headline, are circumstances which possibly render the article ambiguous and, therefore, capable of two constructions, one innocent and the other harmful. In that event, the question of which construction shall be adopted, would be one for the jury.   (*Demos* v. *N. Y. Evening Journal Pub. Co.,* 210 N. Y. 13; *Rovira* v. *Boget, supra.*)

In such a case an innuendo pointing out the construction relied upon is necessary.   The one contained in the complaint here indicates "that by the said publication the defendant intended to and did convey the false, malicious, scandalous and libelous meaning and impression and said article was understood and interpreted by those reading the same, to convey the meaning and impression that the plaintiffs were guilty of extorting and blackmailing and under duress, forcing from said Klein Brothers by unlawful and nefarious means, the sum of One Thousand ($1000) Dollars."   I cannot say that I am entirely free from doubt as to whether the language of the article is capable of the interpretation placed upon it by the innuendo, especially so in the absence of allegations of extrinsic circumstances justifying the meaning charged therein.   To me it seems that the article does support an innuendo that it was understood and interpreted to mean that plaintiffs cheated or defrauded Klein Brothers.   And plaintiffs are undoubtedly bound by the construction set forth in their innuendo.   (*Beecher* v. *Press Pub. Co.,* 60 App. Div. 536.)   The innuendo, however, cannot enlarge the meaning of the language complained of, but may only explain it.   (*O'Connell* v. *Press Pub.*

*Co.*, 214 N. Y. 352; *Fleischmann* v. *Bennett*, 87 id. 231.) On the other hand, if the words were obviously defamatory, plaintiffs would not be limited by the innuendo but could fall back on the natural import of the language. (*Metcalfe* v. *Bill Board Pub. Co.*, 176 App. Div. 859.) But these considerations would appear to be important only in connection with a libel perpetrated against plaintiffs as private individuals, which in the light of their pleading may be said to be academic. For the complaint appears to charge defendant with having . libeled plaintiffs *in connection with their business*. It alleges that the latter are theatrical managers and producers, the owners of numerous parcels of real estate and extensive holders of theatrical properties in the city of New York, and throughout the United States and Canada; that they enjoy a good reputation with and command the respect of their business associates; that they engage in producing theatrical entertainment throughout the United States and Canada in the course of which they engage and make contracts with actors and actresses and otherwise deal with theatrical and other property; that defendant's newspaper was widely distributed and circulated among theatrical proprietors, artists, managers and performers; that the article was intended to bring plaintiffs into ill repute with their business associates and those dealing with them, and to directly injure them in their business which they contend .did actually occur.

Viewing the complaint as charging defendant with having libelled plaintiffs in connection with their business, I am of opinion that the article in question is on its face libelous *per se*, even when read in its entirety and even though the effect of the article be, as defendant argues, merely to charge that plaintiffs *forced* Klein Brothers to pay the given sum of money for the release. Words may libel one in his business or calling even though they do not necessarily hold him up to hatred, ridicule or contempt. It is sufficient that the words tend directly to injure him in such business or calling. They may only charge one with conducting his business in a mean and unpopular manner, and be actionable. The rule is stated in Odgers on Libel and Slander (5th ed. p. 32): "Any printed or written words are libellous which impeach the credit of any merchant or trader * * * or which impute to him fraud or dishonesty or any *mean* or dishonourable conduct in his business, or which impugn his skill *or otherwise injure him in the way of his trade or employment.*" (Italics mine.) In Newell on Slander and Libel (4th ed. p. 156) it is stated that "To enumerate the different decisions upon this subject would be tedious, and to reconcile them impossible; yet they seem to yield a general rule sufficiently simple

and unembarrassed, namely, that words are actionable which directly tend to the prejudice of any one in his office, profession, trade or business." In the very same work (at p. 51) it is stated that " The law has always been very tender of the reputation of tradesmen, and therefore words spoken of them in the way of their trade will bear an action that will not be actionable in the case of another person; and, if bare words are so, it will be stronger in the case of a libel in the public newspaper, which is so diffusive." Accordingly, it has been held that accusing a real estate broker of having charged an outrageous commission and of having thereby taken advantage of defendant's client, was slanderous *per se.* (*Kruse* v. *Rabe,* 80 N. J. L. 378.) Similarly, a charge that plaintiff, during a coal famine, charged extortionate prices and refused to sell to persons who were ill, has been held libelous *per se.* (*Gross Coal Co.* v. *Rose,* 126 Wis. 24.) So, too, where one was charged with having forced his partner into retirement and having seized the profits of the latter's brain and capital. (*Klaw* v. *N. Y. Press Company, Ltd.,* 137 App. Div. 686.) There, Mr. Justice LAUGHLIN, writing for the Appellate Division, held that the language was libelous *per se* even if it merely charged plaintiff with having taken undue advantage of his former partner without imputing to him an unlawful seizure of the profits, saying (at p. 688): " Of course it was not a libel on the plaintiff or on any one to publish that one of his former partners, who furnished the money for the original ventures of the firm, is now running an orange grove in Florida. The libel, if any, is in the final sentence of the article. It is there charged in substance that the plaintiff and Erlanger ' forced ' Jefferson ' into retirement and seized the whole profits ' of his brains and capital for themselves. Was this intended, and would it be understood, as complimentary or as an innocent announcement of the dissolution of the copartnership, or was it intended, *and would it be understood, as reflecting on the plaintiff's business methods in a manner calculated to affect and affecting his standing in his profession and calling in the business world? It seems to me that this question may be decided as matter of law, and that the article is libelous per se without any innuendo. It may be said, I think, as matter of law, that the article would be understood as charging, at least, that the plaintiff and Erlanger took undue advantage of Jefferson, their partner,* if it would not be understood as charging that they appropriated to themselves profits of the business belonging to him." (Italics mine.)

In the light of all this, it seems very clear to me that the charge that plaintiffs had forced Klein Brothers to pay $1,000 to be released

accused them at least of mean and hard dealing and was indeed calculated to injure and prejudice them in their business, and the article is, therefore, libelous *per se.* This being the situation no innuendo is necessary. (*Morrison* v. *Smith,* 177 N. Y. 366; *Martin* v. *Press Pub. Co.,* 93 App. Div. 531.) The motion for judgment on the pleadings must, therefore, be denied.