FRANCIS A. REARDON, Plaintiff-Appellant, v. THE NEWS-JOURNAL COMPANY, a corporation of the State of Delaware, Defendant-Appellee.

(*October* 6, 1960.)

SOUTHERLAND, C. J., WOLCOTT and BRAMHALL, J. J., sitting.

*Harold Leshem* and *H. B. Rubenstein* (of the firm of Leshem and Rubenstein) for plaintiff, appellant.

*Louis J. Finger* (of the firm of Richards, Layton and Finger) for defendant, appellee.

Supreme Court of the State of Delaware, No. 25, 1960.

BRAMHALL, J.:

Two questions are presented by this appeal: (1) Does the complaint state a cause of action for libel?; and (2) Does the complaint state a cause of action for invasion of the right of privacy?

Plaintiff's complaint is based upon a newspaper article published by defendant on May 21, 1959, based upon certain criticism of plaintiff, a Judge of the Family Court of New Castle County, at a meeting of the Board of the Youth Services Commission, a commission first appointed by the Governor on July 22, 1957, by virtue of the provisions of 31 *Del. C.* § 5101 *et seq.* The purpose of the Act creating the Commission, as set forth therein, was to provide for the consolidation, administration and operation under a single agency of all state-owned training facilities for the care and education of delinquent juveniles.

The headline of the article to which plaintiff takes exception reads as follows: "Youth Services Board Lashes Judge Reardon." In the body of the article it was stated that a member of this Board severely criticized plaintiff for his remarks made at a hearing in the Family Court of several teen-agers, escapees from the Ferris School. They had stolen a car and had driven it on the sidewalk, almost killing several children at play. In the course of the hearing plaintiff stated, "Would lashes help?" Plaintiff further commented, "I am not in favor of the whipping post." At a meeting of the Commission shortly thereafter a motion opposing the use of the whipping post was passed unanimously, at which time it was further stated that this resolution was not only an expression of the feelings of the members of the Board, but was also an "answer to Judge Reardon".

Plaintiff's complaint is predicated (1) upon the use of the word "lashes" in the headline of the article and (2) the false attribution of a statement made by a member of the

Board to the Commission as a whole. Plaintiff contends that considering the manner in which it was used, the word "lashes" carried degrading implications. He states that this was so particularly in view of the fact that a bill to revive the whipping post had been passed by the General Assembly and vetoed by the Governor, and that at the time of the appearance of this article, the bill was pending for action upon the Governor's veto. Plaintiff says that the fact that in the body of the article the occurrences at the meeting were correctly set forth does not cure the damage, if any, done by the headline.

### 1. Does The Complaint State A Cause of Action For Libel?

It has long been stated as the law in this State that a written defamation will be actionable if it imputes something which intends to disgrace one, lower him in, or exclude him from, society, or bring him into contempt or ridicule. This rule has been in effect in this State since the case of *Rice v. Simmons, Ct. Err. & App.* 1838, 2 *Harr.* 417, and was followed by our Superior Court in the case of *Snavely v. Booth,* 6 *W. W. Harr.* 378, 176 *A.* 649, and later by a number of other cases. This definition was reaffirmed by this Court in 1952 in the case of *Klein v. Sunbeam Corporation,* 8 *Terry* 526, 94 *A.* 2d 385.

It is true that the sting of a libel may sometimes be contained in a word or sentence used in a headline to the body of the article, even though the facts are correctly set forth in the body. As newspaper articles are written, the headline is a part of the article and a defendant may be liable merely in consequence of such headline where, without it, he would have had a complete answer to the action. *Shubert v. Variety, Inc.,* 128 *Misc.* 428, 219 *N. Y. S.* 233. It is also true, as contended by defendant, that under other circumstances actionable language which may be found in the headline is cured by language found in the body of the article itself, *Brinkley v. Fishbein,* 134 *Kan.* 833, 8 *P.* 2d 318. See *Corbett*

*v. American Newspapers, Inc.*, 1 *Terry* 10, 5 *A.* 2d 245. We do not here pass upon the question as to which line of decisions is applicable in this case. We shall assume, as contended by plaintiff, that the statement in the headline, if it is actionable, is not cured by the language of the body of the article. We shall further consider the effect of the headline apart from the article itself.

 ██  We do not think that the language of the headline is libelous. The word "lashes" as it appears in the headline, of itself, conveys only the meaning that the Board sharply disagreed with the language used by plaintiff. Considering the article as a whole along with the background information offered by plaintiff, it amounts at most only to a play on words, the humor of which, very understandably, escaped plaintiff. Defendant's attempt at a pun was, to say the least, not in good taste. It was to plaintiff a "pistol let off at the ear; not a feather to tickle the intellect". We feel that the use of such word, particularly in the setting in which it was used in this case, was not only inaccurate but unfortunate. It tended greatly to accentuate the adverse criticism of plaintiff appearing in the article. Moreover, the headline was inaccurate for the criticism did not emanate from the Board as a body, but from only one of its members and the headline further accentuated the criticism.

But we do not think that the statement was libelous. There was no attack upon plaintiff, either personally or in his professional capacity. While strong disapproval of plaintiff's remark was indicated therein, we find nothing which in any manner intended to degrade defendant or reflect upon his character or injure him in his profession. See *Snavely v. Booth, supra.*

Plaintiff as a Judge of the Family Court of New Castle County is a public figure. The article related to plaintiff's action during the course of a public trial. What he said and did in his public capacity is subject to comment and reason-

able criticism—and properly so. As far as this action is concerned, plaintiff is in no position to complain if at times such criticism becomes biting, or even unfair, as long as it does not come within the definition of libel as laid down in the decisions of this State. As plaintiff so fully demonstrated in his brief, the subject of the whipping post has long been a highly controversial subject of discussion of this State. When plaintiff made the statement which he did, he knew, or should have known, that he must expect to receive sharp criticism for his remarks from a number of sources. He cannot complain of such criticism. Neither can he complain if such criticism becomes a matter of public information through the medium of the press. See *Prosser on Torts* (2d ed.), p. 621. Even the United States Supreme Court from the time of its inception down to the present time has not been immune from criticism much greater than the alleged affront to plaintiff's dignity of which he complains. See *Snavely v. Booth, supra.*

2. Does The Complaint State A Cause Of Action For Invasion Of The Right Of Privacy?

Plaintiff contends that defendant is guilty of a violation of his right of privacy. As we understand his argument, it is that as a result of the alleged invasion of his right of privacy, he has been injured in personal dignity and respect, in particular, the dignity and respect relating to the tradition and respect for his judicial office. Plaintiff further states that the fact that he is a public figure—if he should be so considered— does not destroy, *ipso facto*, his right of privacy. Recognizing that a newspaper article covering a legitimate news event falls within the scope of proper immunity pertaining to the publication of current news, plaintiff states that because of the manner of the presentation of this event, it becomes a question for the jury to say whether such article constitutes an unwarranted invasion of his right of privacy.

In Delaware the question of existence of an action for the invasion of one's right of privacy has never been deter-

mined. We do not pass upon this question here, but assume, for the purpose of this opinion, that such right of action does so exist.

■ The right of privacy has been defined generally as the unwarranted appropriation or exploitation of one's personality, the publicizing of one's affairs with which the public has no legitimate concern or the wrongful intrusion into one's private activities in such manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibility. *Continental Optical Co. v. Reed*, 119 *Ind. App.* 643, 86 *N. E.* 2d 306, 88 *N. E.* 2d 55, 14 *A. L. R.* 2d 743.

■ We are frankly at a loss to see how, under the facts of this case, an action for the invasion of the right of privacy could exist. The general purpose of protecting the right of privacy relates to one's *private* life, not when that life has become a matter of legitimate *public* interest. *McGovern v. Van Riper*, 140 *N. J. Eq.* 341, 54 *A.* 2d 469. In addition, there are a number of limitations to this right of action with which we are here concerned: the freedom of the press, matters of legitimate public interest, matters involving public figures, the 'newsworthiness' of the article.

■ The article in this case was a legitimate newspaper article concerning a statement made by plaintiff in a public hearing. It related very definitely to what at the time was a matter of great public interest: the revival of the use in certain cases of the whipping post in Delaware. Except for the unfortunate use of the word "lashes" and the incorrect attribution of the criticism to the Board as a whole, the occurrence was accurately and properly reported. Plaintiff is definitely a public figure engaged at the time for which this complaint is made in presiding over a public trial in which the public, especially the Commission, had a very decided interest. As previously stated, plaintiff was, or should have been, aware that such controversial remarks—even though made in

the form of a rhetorical question—were bound to cause considerable adverse criticism.

We do not think that the publication of the article in question constituted the invasion of any right of plaintiff, certainly not a private right such as is necessary to justify an action for the invasion of the right of privacy.

Plaintiff seems to argue that the use of the word "lashes" and the attribution of the criticism of plaintiff to the whole Board, instead of to one of its members, places this case under a line of cases in which the facts of the article are so distorted and fictionalized as to constitute an invasion of the right of privacy for which action will lie. We do not see how this could possibly be so. Without referring specifically to the cases cited by plaintiff, it is sufficient to say that in those cases the facts were so distorted and fictionalized that they did not constitute in the truest sense a newspaper article at all but rather a fictionalized article such as sometimes appears in the magazine section of a Sunday newspaper or in one of those magazines specializing in stories of unsavory conduct on the part of persons who are unfortunate enough to be "written up" therein. Here the article was a legitimate news article concerning a remark by a Judge in his official capacity relating to a matter of great public interest. There is no merit to this contention.

The judgment of the Superior Court will be affirmed.