189 A.2d 773 (1963)
John P. BARBIERI, Appellant,
v.
NEWS-JOURNAL COMPANY, a corporation of the State of Delaware, Appellee.
Supreme Court of Delaware.
March 13, 1963.
Hiram W. Warder, Wilmington, for appellant.
Louis J. Finger, of Richards, Layton & Finger, Wilmington, for appellee.
SOUTHERLAND, C. J., and WOLCOTT and TERRY, JJ., sitting.
SOUTHERLAND, Chief Justice.
The tort complained of here  violation of the right of privacy  has never been expressly recognized as a part of our law. Reardon v. News-Journal Co., Del., 164 A. 2d 263, assumed, without deciding, that it is an actionable wrong. The facts of the instant case are as follows:
On March 27, 1961, the "Wilmington Morning News" reported in its news column a statement of a member of the State Senate respecting a bill he hoped to introduce which would make mandatory for certain crimes the punishment of whipping. The article concluded:
"The last person to feel the lash under Delaware's whipping post was John Barbieri, 30, who was convicted of breaking and entering. He received *774 twenty lashes at the New Castle Correctional Institution in June, 1952."
The "Evening Journal" of April 8, 1961, carried another news article about the suggestion that the punishment of whipping be made mandatory in certain cases. Toward the end of the article it referred to John Barbieri as holding "the dubious distinction of having been the last man to feel the bite of the lash", and stated that he had received 20 lashes in June, 1952.
The "Morning News" of December 5, 1961, reported the case of a defendant who was sentenced by the Superior Court to five years and 20 lashes. The sentence was suspended and the defendant placed on probation. The article referred by name to a previous offender who in 1950 had been sentenced to whipping in Kent County. It also referred to the whipping of John P. Barbieri in 1952 "for beating a woman in her home."
The "Evening Journal" of the same date carried practically the same story as the "News", including the reference to the two prior cases.
It is plaintiff's contention that the public reporting of the fact that nine years before he had suffered the humiliating punishment of whipping is a violation of his right of privacy and is actionable.
The existence of this tort, though of recent origin, is now well recognized. It stems from the "right to be let alone" referred to by Judge Cooley (Cooley on Torts, 2d Ed., 1889, p. 29) and developed at some length in the well-known article by Warren and Brandeis. 4 Harv.L.Rev. (Dec. 15, 1890), 193. The Restatement of the Law of Torts, § 867, treats the right as an established one. See also Prosser On Torts, 2d Ed., Ch. 20, p. 635 ff. We referred to the rule, without deciding whether it was the law in Delaware, in Reardon v. News-Journal Co., Del., 164 A.2d 263, 266. Cf. Ettore v. Philco Television Broadcasting Corporation, 3 Cir., 229 F.2d 481, 58 A.L.R. 2d 626. We see no reason for not recognizing it as a part of our law.
It is not surprising that the application of a rule of law of such recent development presents difficulties. Its scope and its limitations are still somewhat uncertain. Prosser says:
"It appears in reality to be a complex of four distinct wrongs, which have little in common except that each is an interference with the plaintiff's right `to be let alone.'" p. 637.
Prosser lists the following examples:
1. Intrusion on the plaintiff's physical solitude.
2. Publication of private matters violating the ordinary decencies.
3. Putting plaintiff in a false position in the public eye, as by signing his name to a letter attributing to him views that he does not hold.
4. Appropriation of some element of plaintiff's personality for commercial use.
The delineation of the limitations of the rule presents serious difficulties. The press has the right, guaranteed by the federal and state constitutions, to publish news and all matters of legitimate public concern. One who seeks the public eye cannot complain of publicity if the publication does not violate ordinary notions of decency. The same rule applies to persons accused or convicted of crime. The Restatement says:
"One who unwillingly comes into the public eye because of his own fault, as in the case of a criminal, is subject to the same limitations upon his right to be let alone. Community custom achieves the same result with reference to one unjustly charged with crime or the subject of a striking catastrophe. Both groups of persons are the objects of legitimate public interest during a period of time after their conduct or misfortune has brought them to the *775 public attention; until they have reverted to the lawful and unexciting life led by the great bulk of the community, they are subject to the privileges which publishers have to satisfy the curiousity of the public as to their leaders, heroes, villains and victims." § 867, p. 400.
The concluding sentence of the above quotation is the basis of plaintiff's case here. He concedes, as he must, that the publication in 1952 of the circumstances of his crime and punishment was no violation of his right of privacy. But he says (and his complaint so avers) that he has reformed; he has since led, and is now leading, a blameless life as a good workman and a good family man. Hence his case is that he has reacquired his right of privacy, and to publish his name in connection with an episode nine years old is an actionable wrong.
But we do not agree that the lapse of time, in itself, recreates, or reinstates, a plaintiff's prior right of privacy, because the right of the press to republish the unpleasant facts still exists if those facts are "newsworthy", i. e., if they still are of legitimate public concern. Prosser, op. cit., p. 644.
Some of the decided cases involving republication of matters once of public interest seem to recognize such a distinction, although it is perhaps not always clearly made.
In Smith v. Doss, 251 Ala. 250, 37 So.2d 118, the republication of a deceased father's disappearance of 25 years before, and the erroneous suspicion of another person of his supposed murder, were held no invasion of the plaintiffs' right of privacy, for the story was a matter of public record and a part of the life of the community.
In Estill v. Hearst Publishing Company, 7 Cir., 186 F.2d 1017, defendant republished 15 years later a photograph of plaintiff "in a friendly pose" with the "noted outlaw" Dillinger. The republication was part of a series of articles on Dillinger's career, and the series was inspired by the recent death of a "Dillinger gang `moll'". Plaintiff at the time was a public official. The court held the republication no invasion of the right of privacy, because the matter published was not private but public. The court did not discuss the distinction we have sought to make, but it is clear that the series of articles on the career of a notorious criminal was a matter of legitimate public interest. The steady popularity of the summaries and records of criminal trials is evidence of that interest. One who is unfortunate enough to become connected with a criminal trial, especially as the criminal, has ordinarily no right of privacy in respect of his connection with the event that will prevail over the rights of the press to print and the public to know the facts. Of course, if it is clear that all legitimate public interest in the subject has long since ceased, or if the matter published is offensive to common decency, a different situation is presented.
In Sidis v. F-R Publishing Company, 113 F.2d 806, 138 A.L.R. 15, the Second Circuit Court of Appeals applied the test we have above adopted, i. e., the continued newsworthiness of the subject dealt with. The plaintiff, Sidis, was a child prodigy in 1910. His name and accomplishments were well known. At the age of eleven he lectured to distinguished mathematicians on the subject of Four-Dimensional Bodies. After graduating at sixteen, his name appeared only sporadically in the press and he sought to live as unobtrusively as possible. In 1937 The New Yorker weekly magazine made him the subject of a biographical sketch and cartoon. The court described the article as having great reader interest but also as a "ruthless exposure of a once public character, who has since sought and has now been deprived of the seclusion of private life." In holding that the article was not actionable, the court said:
"Since then [1910] Sidis has cloaked himself in obscurity, but his subsequent history, containing as it did the answer *776 to the question whether he had fulfilled his early promise, was still a matter of public concern."
The court added:
"We express no comment on whether or not the news worthiness of the matter printed will always constitute a complete defense. Revelations may be so intimate and so unwarranted in view of the victim's position as to outrage the community's notions of decency."
See also Cohen v. Marx, 94 Cal.App.2d 704, 211 P.2d 320.
Applying these authorities to the case at bar, we think that the republication in 1961 of the facts of plaintiff's conviction and punishment in 1952 was not actionable. This is so because the subject matter dealt with  the use of corporal punishment to deter crime  was one of acute public interest in this State during the year 1961. Both opponents and advocates of the whipping post were highly articulate in presenting thier views in the public press, which, by editorial discussions, lent further interest to the matter. It was a legitimate subject of public interest, and the plaintiff's connection with it  the last man to have suffered the penalty  had a real bearing on the matter. The press did nothing more than to print the facts.
Resisting this conclusion, plaintiff argues, with some plausibility, and indeed with some appeal, that although the fact of the punishment in 1952, and its non-use thereafter may have been newsworthy, the use of plaintiff's name was unjustified. He relies heavily upon Melvin v. Reid, 112 Cal. App. 285, 297 P. 91. In that case plaintiff had formerly been a prostitute. She was tried for murder and acquitted. Thereafter she abandoned her life of shame, in 1919 married happily, and had since lived an exemplary life. In 1925 the defendants made and produced a motion picture entitled "The Red Kimono", based upon the story of appellant's life, and used her true maiden name in the picture. The effect, she claimed, was to expose her to obloquy and contempt.
It was held she could maintain the action. The court held that although the use of the facts embodied in the public records was non-actionable, the use of plaintiff's true name was "unnecessary and indelicate, and a willful and wanton disregard of that charity which should actuate us in our social intercourse." 297 P. 93.
With deference to the California Court of Appeal, we must express a serious doubt whether basis of the decision  the unnecessary and indelicate use of plaintiff's name  is a sound one on which to sustain an action for invasion of privacy. Such a rule would in reality subject the public press to a standard of good taste  a standard too elusive to serve as a workable rule of law. We agree that the producer of the picture in the Melvin case was guilty of a breach of good taste; and we add that we think that the articles here involved evidenced a lack of feeling for the plaintiff. Indeed, the articles did not even credit the plaintiff with the rehabilitation he had apparently achieved, whether because of ignorance or indifference or for other reasons, we cannot say. As plaintiff's counsel says, what did plaintiff's name add to the story? The point was the gradual disuse of the whipping post.
But we cannot agree to impose upon the public press a legal standard founded on such considerations. There must be something more than the mere publication of facts of record relating to a matter of public interest. In the Melvin case, in our opinion, there was the fact of exploitation of plaintiff's private life for commercial profit in a medium  the motion picture  almost inevitably entailing a certain amount of distortion to capture the attention of the public. If the facts of the murder trial had been set forth in a collection of studies of criminal cases, a different result would be indicated. In our view, the Melvin case falls in Dean Prosser's fourth category and *777 not in his second. There is nothing in the articles here complained of which violates the ordinary decencies, and of course nothing of an attempt to exploit the plaintiff's life for commercial reasons.
We do not think it important to review other authorities dealing with the general subject. A great number of the decisions are collected and summarized in two annotations in 138 A.L.R. pp. 22-110 and 168 A. L.R. 446-467. The types of conduct involved are so disparate, and the facts of the cases are so different, that it seems prudent to deal only with the precise question before us, viz.: Whether republication after 9 years of the circumstances of plaintiff's conviction and punishment, and of his name, at a time when the subject of the use of corporal punishment for crime was of renewed public interest, was an invasion of privacy. Since the articles dealt with a subject still newsworthy, their publication is not actionable.
The judgment of the court below is affirmed.