RONALD KENT MONTESANO, Appellant, *v.* DONREY MEDIA GROUP, dba LAS VEGAS REVIEW JOURNAL and SUE VOLEK, Respondents.

No. 12275

September 6, 1983                    668 P.2d 1081

[Rehearing denied December 12, 1983]

*Lehman and Nelson* and *Harold M. Hecht,* Las Vegas, for Appellant.

*Dickerson, Miles & Pico,* Las Vegas, for Respondents.

## OPINION

By the Court, MANOUKIAN, C. J.:[1]

This appeal concerns the claimed tortious public disclosure of private facts. Appellant contends that the actionable wrong resulted from the respondents' publication of his involvement in a hit-and-run accident twenty years earlier in which a police officer was killed. Respondents argue that because the news article was drawn from public records and because appellant's misdeeds were directly related to a subject of current public interest, the hit-and-run accident which occurred twenty years earlier was "newsworthy" at the time of publication. Being persuaded that "the interests of privacy fade when the information involved already appears on the public record" and that appellant's conviction for hit-and-run was intimately connected to the subject matter of the news story, we conclude that no actionable tort resulted from respondents' publication. Accordingly, we affirm the lower court's order dismissing the complaint with prejudice.

The seed of this dispute was sown in April 1955, when a Las Vegas police officer, who was responding to an emergency call, was killed in a collision. Appellant, Ronald Kent Montesano, was a passenger in the car which collided with the officer's motorcycle. Both appellant and the driver of the car in which he was riding fled the scene of the accident. At that time, appellant was seventeen years old. He was adjudicated as a juvenile delinquent and spent several weeks in the State Industrial School at Elko.

Appellant's criminal history did not end with the hit-and-run conviction. When appellant was nineteen, his Las Vegas apartment was the target of a narcotics raid. As a result of the raid, he was charged with and convicted for felony possession of marijuana. Appellant was sentenced as an adult offender to two years at the Nevada State Prison.

On February 24, 1978, the respondents printed a story describing the recent murder of a policeman. The newspaper article also recounted the history of Las Vegas law enforcement

[1]THE HONORABLE DAVID ZENOFF, Senior Justice, was designated to sit in this case in the place of THE HONORABLE CAMERON BATJER. Nev. Const., art. 6, § 19; SCR 10.

officers who had lost their lives in the line of duty. The specifics of appellant's hit-and-run conviction were detailed, as well as his conviction for possession of marijuana. Appellant was identified by name in the article.[2]

Appellant brought an action grounded on two claims for relief. First, he alleged a claim for public disclosure of private facts. Appellant contended that the twenty year span between the hit-and-run and the respondents' publication eroded any "newsworthiness" his misfortunes may have had because during that period he married, raised a family and became a law abiding citizen. Secondly, he alleged that the newspaper violated his statutory privilege of confidentiality provided by NRS 62.200(3) (now NRS 62.211(3)) because he was a juvenile when the collision occurred.[3]

Respondents moved to dismiss the complaint under NRCP 12(b)(5) for failure to state a claim upon which relief can be granted. They noted that the relevant information of appellant's hit-and-run conviction was contained in a parole and

---

[2]The Las Vegas Review Journal article of February 24, 1978, under the byline of Sue Volek read in pertinent part:

[In 1966] it had been more than 11 years since motorcycle policeman Sgt. Robert Dula was struck and killed by a car as he was rushing to an emergency call in April 1955.

Records indicate that Marlin Bray, then 16, and Ronald Kent Montesano, then 17, allegedly had beaten a Nellis Airman at Fifth and Fremont Street. As Dula and another officer answered that emergency call, Dula was hit by the car driven by Bray. He never regained consciousness and died after reaching the hospital.

Police records incidate the two juveniles ran from the accident scene, later bragging about the incident at a drive-in restaurant. The pair was arrested the following morning.

Bray and Montesano were sent to the State Industrial School at Elko but were back home on parole a few weeks later. At that time, officials said the releases probably were made because the two had plans to leave the state.

But exactly two years later, Montesano's Las Vegas apartment was the target of a narcotics raid. He pleaded guilty to charges of possession of marijuana and was sentenced to two years in prison.

[3]In 1955, NRS 62.200(3) provided in relevant part that:

[T]he name or race of any such child in connection with any proceedings under [the Juvenile Court Act shall not] be published in any newspaper without a written order of the court. 1943 N.C.L. § 1038.19.

In 1978, NRS 62.200(3) provided in relevant part that:

[T]he name . . . or the race of any such child in connection with any proceedings under [The Juvenile Court Act shall not] be published in or broadcasted or aired by any news medium without written order of the court. 1977 Nev. Stats. ch. 531 § 9, ch. 309 § 1.

probation report prepared in 1955 to assist the court's sentencing decision on his possession conviction. Respondents alleged that the report was "a matter of public court record." Because appellant's misdeeds were of public record, respondents contended that he could not avail himself of the protections of NRS 62.211(3), nor could he maintain an action for public disclosure of *private* facts. Additionally, respondents argued that because appellant's hit-and-run conviction was relevant to an issue of contemporary public interest, mere passage of time did not erode the "newsworthiness" of appellant's criminal history.

The lower court ruled that the complaint failed to state a claim upon which relief can be granted because no publication of "private facts" occurred. The complaint was dismissed with prejudice. Appellant now challenges the lower court's ruling.

1. Standard of Review.

On appeal, respondents argue that matters outside the pleadings were attached to their Rule 12(b)(5) motion which were not excluded by the court and that, pursuant to Rule 12(b), the motion [was] treated as one for summary judgment and disposed of as provided in Rule 56. . . ." *See also* Cummings v. City of Las Vegas Mun. Corp., 88 Nev. 479, 499 P.2d 650 (1972); Kellar v. Snowden, 87 Nev. 488, 489 P.2d 90 (1971). Appellant seems to contend that because respondents did not submit any affidavits in support of their motion, the trial court did not treat it as one for summary judgment.

Respondents' motion was accompanied by the court records of appellant's offenses and by a copy of the news article. Appellate courts generally rely on two factors in determining whether a trial court rendered summary judgment rather than dismissed the cause for failure to state a claim. First, the reviewing court looks for indications that the lower court affirmatively excluded material outside the pleading. Lodge 1380, Broth. of Ry., etc. v. Dennis, 625 F.2d 819, 824 (9th Cir. 1980). In the instant case, the lower court relied on "matters outside the pleading" when arriving at its decision to dismiss appellant's claim for relief. The second factor is whether the reason for dismissal indicates that the district court did, in fact, consider matters outside the complaint. Lodge 1380, 625 F.2d at 825. Here, the trial court found that, as a matter of law, no cause of action existed for invasion of privacy because the facts disclosed were not private facts. This ruling indicates that the trial judge transcended the bare allegations in the complaint and considered matters outside the pleadings. Therefore, the

dismissal of appellant's action should be treated as a summary judgment.

Appellant, however, has conceded in his opposition to the motion to dismiss and on appeal that the relevant facts herein are undisputed. Thus, we can rule on this issue as purely a question of law.

2. The Public Record Ground.

This court has impliedly recognized an action for invasion of privacy in Norman v. City of Las Vegas, 64 Nev. 38, 177 P.2d 442 (1947). In the instant case, appellant has based his claim for relief on the fourth branch of the tort of invasion of privacy. The Second Restatement of the Law of Torts has named that branch the tort of "Publicity Given to Private Life." Restatement (Second) of Torts § 652D (1977). To maintain a cause of action for public disclosure of private facts one must prove that a public disclosure of private facts has occurred which would be offensive and objectionable to a reasonable person of ordinary sensibilities. Forsher v. Bugliosi, 608 P.2d 716, 725 (Cal. 1980); Restatement (Second) of Torts § 652D (1977). At issue in the present case is whether the publicity concerned the private, as distinguished from public life, of the appellant and whether the matter publicized is of a kind that is not of legitimate concern to the public. *See* Howard v. Des Moines Register & Tribune Co., 283 N.W.2d 289, 298 (Iowa 1979), *cert. denied,* 445 U.S. 904 (1980).

As noted in Comment b to Section 652D, "[t]here is no liability when the defendant merely gives further publicity to information about the plaintiff that is already public." *Accord* Howard, 283 N.W.2d at 298; Winegard v. Larsen, 260 N.W.2d 816, 823 (Iowa 1977). *See* Warren & Brandeis, The Right to Privacy, 4 Harv.L.Rev. 193, 214 (1890). The courts have universally recognized that, for the purposes of the tort of invasion of privacy, materials properly contained in a court's official records are public facts. Cox Broadcasting Corp. v. Cohn, 420 U.S. 469 (1975); Melvin v. Reid, 297 P. 91, 93 (Cal.App. 1931); Bell v. Courier Journal and Louisville Times Co., 402 S.W.2d 84, 88 (Ky. 1966); Hubbard v. Journal Publishing Co., 368 P.2d 147, 148 (N.M. 1962); Schnabel v. Meredith, 107 A.2d 860, 862-863 (Pa. 1954). To resolve this issue, we must determine whether the information which the respondents printed in the Las Vegas Review Journal was properly contained in the court's official record. *See* Howard, 283 N.W.2d at 299.

Section 1038.19 of the 1943 NCL provides, in relevant part, that "the name or race of any such child in connection with any proceedings under [the Juvenile Court Act shall not] be published in any newspaper without a written order of the court." This statute or its substantial equivalent was in effect in 1955 when the accident occurred and in 1978 when the article was published. The records indicate that appellant was adjudicated as a juvenile delinquent. It follows that his conviction for "hit-and-run" should have never been published in a newspaper.[4] NRS 62.211(3). Nevertheless, some of the information concerning the 1955 accident found its way into a State Parole and Probation report which was prepared for the judge who sentenced appellant on the possession charge. This information was incorporated into official court records regarding a criminal charge for which appellant was tried as an adult. It is the publication of this information which prompted this litigation.[5]

Although NRS 62.211(3) and its predecessors plainly state that the name of a child shall not be published in any news medium in connection with a juvenile court proceeding, for the purpose of this appeal, the material published by the respondents should be considered "public facts." The tort of invasion

[4]Respondents contend that because a juvenile court loses jurisdiction over an individual who is 21 years old, publication of juvenile court proceedings once the defendant is older than 21, does not violate NRS 62.211(3) or its predecessors. Given the protective goals of NRS 62.211(3), which seek to encourage rehabilitation of the youthful offender, such a construction is wholly without merit.

[5]Appellant's complaint did not allege NRS 213.1098 as a separate statutory claim to a privilege of confidentiality. Nevertheless, in an overabundance of caution, respondents addressed in their motion to dismiss the applicability of that statute which provides that any information obtained in the discharge of an official duty by a parole and probation officer or employee of the board shall be privileged. Appellant's Opening Brief contends that because respondents' news article was based on information obtained in the discharge of an official duty by a parole and probation officer or employee, the respondents violated his statutory privilege of confidentiality. Arguments raised for the first time on appeal need not be considered. Williams v. Zellhoefer, 89 Nev. 579, 517 P.2d 789 (1973). Additionally, NRS 213.1098 was enacted in 1959, two years after the parole and probation report was prepared. 1959 Nev. Stats. ch. 461, § 17. The Legislature did not expressly provide that the statute was to be given retrospective effect. The general presumption favors prospective application of statutes. See Holloway v. Barrett, 87 Nev. 385, 487 P.2d 501 (1971). Since the probation report was an unprotected public record in 1957, NRS 213.1098 does not now operate to make the probation report privileged.

of privacy by publication of private facts pits society's interest in a free press against an individual's right to privacy. *See* Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 489 (1975). Here, the respondents drew their information from official court records of an adult offense which contained little or no evidence that the "hit-and-run" conviction could not be reported. Penalizing the respondents for relying on such public records would do little to protect an individual's right to privacy and would greatly hinder the media in its investigations. Because as a free society we have an enormous public interest in a vigorous and unfettered press, we are impelled to hold that the information contained in the court records of appellant's possession conviction was in the public domain.

3. Legitimate Concern to the Public.

Appellant argues that, even if the information surrounding the death of the police officer and appellant's conviction for possession of marijuana were public facts properly contained in court records, the lapse of 20 years between the "hit-and-run" conviction and the publication eroded the public nature of those facts. Specifically, appellant contends that because he has returned to the private, lawful and unexciting life led by the great bulk of the community, the facts and circumstances surrounding his crimes and his identity are no longer matters of legitimate public concern.

Comment h of Section 652D provides that:

> In determining what is a matter of legitimate public interest, account must be taken of the customs and conventions of the community; and in the last analysis what is proper becomes a matter of the community mores. The line is to be drawn when the publicity ceases to be the giving of information to which the public is entitled, and becomes a morbid and sensational prying into private lives for its own sake, with which a reasonable member of the public, with decent standards, would say that he had no concern. The limitations, in other words, are those of common decency, having due regard to the freedom of the press and its reasonable leeway to choose what it will tell the public, but also due regard to the feelings of the individual and the harm that will be done to him by the exposure. Some reasonable proportion is also to be maintained between the event or activity that makes the individual a public figure and the private facts to which publicity is given.

Passage of time, of course, is a relevant factor, with other

facts, in determining whether the publicity involves a matter of legitimate public concern. Restatement (Second) of Torts § 652D Comment k (1977).

In Howard, *supra,* the Iowa Supreme Court ruled on an article which concerned the involuntary sterilization of the plaintiff while a resident of a county home. The article was drawn from records accessible under Iowa's Freedom of Information Act. Although it was printed in the defendant's newspaper five years after the sterilization occurred, the publication was held not actionable. The *Howard* court determined that although the defendant identified the plaintiff by her maiden name in the article, the disclosure of the plaintiff's sterilization and her identity were matters of legitimate public concern, *i.e.,* they were "newsworthy." The article was published in response to the revocation of the county home's license by the State Health Department for poor care and lax administration. Howard, 283 N.W.2d at 292. The Iowa court found that the plaintiff's involuntary sterilization at the age of 18 was one of the better documented examples of abuse which led to the revocation. The addition of the plaintiff's identity to the article personalized the report of administrative excesses and lent specificity and credibility to the article. Additionally, at the time of the publication, the subject of involuntary sterilizations in public institutions was one of grave public interest. *Id.* at 303. Thus, the Iowa Supreme Court held that "[a] reasonable person could not find the disclosure in [*Howard*] was not of legitimate public concern under the *Restatement* standard applied in light of the First and Fourteenth Amendments." *Id.* at 304.

In Barbieri v. News-Journal Co., 189 A.2d 773 (Del. 1963) the Delaware Supreme Court found that the defendant's publication of the plaintiff's misfortune to be "[t]he last person to feel the lash [at the New Castle Correctional Institution in June, 1952] under Delaware's whipping post . . .", *id.* at 773-774, was not an actionable wrong. Although the plaintiff was identified by name and had, during the nine years between the whipping and the publication returned to "a blameless life as a good workman and a good family man," the *Barbieri* court held that the incident was still of legitimate public concern. *Id.* at 775. At the time of the publication, the subject matter of the article—the use of corporal punishment to deter crime—was of acute public interest because a state senator had introduced a bill which would have made whipping mandatory punishment for certain crimes. *Id.* at 773, 775. The plaintiff's experience had a real bearing on the public issue, even though the court

questioned the defendant's judgment in identifying the plaintiff and not crediting him with his rehabilitation. Nevertheless, the Delaware court rejected the plaintiff's argument, which was premised on Melvin v. Reid, 297 P. 91 (Cal.App. 1931), that the use of his name was unjustified. The standard enunciated in *Melvin*, "that the use of plaintiff's true name was unnecessary and indelicate and a willful and wanton disregard of that charity which should activate us in our social intercourse," *Barbieri*, 189 A.2d at 776, *citing*, Melvin v. Reid, 297 P. 91, 93 (Cal.App. 1931), was too subjective a standard to impose on a free press.[6] Thus, in *Barbieri*, the publication of the plaintiff's whipping was held to be a newsworthy event and was not actionable. *Barbieri*, 189 A.2d at 777. *See also* Hubbard v. Journal Publishing Co, 368 P.2d 147 (N.M. 1962); Smith v. Doss, 37 So.2d 118 (Ala. 1948).

The United States Supreme Court, in Cox Broadcasting Corp. v. Cohn, 420 U.S. 469 (1975), overturned on First Amendment grounds a Georgia statute making it a misdemeanor to publish or broadcast the name or identity of a rape victim and held that the defendant's publication of the rape victim's name could not support an action for invasion of privacy.[7] In *Cox Broadcasting*, the Supreme Court noted that, more than any other branch of the tort of invasion of privacy, the tort of public disclosure of private facts directly confronts the constitutional freedoms of speech and press. This confrontation occurs "[b]ecause the gravamen of the claimed injury is the publication of information, whether true or not, the dissemination of which is embarrassing or otherwise painful to an individual. . . ." *Cox Broadcasting*, 420 U.S. at 489. In recognition that the defendants obtained the victim's name from

---

[6]Melvin v. Reid, 297 P. 91 (Cal.App. 1931), concerned a suit for invasion of privacy brought by a former prostitute who had been tried for murder and acquitted. After the trial, she married and lived an exemplary and honorable life. Seven years later, the defendants distributed a film based on the plaintiff's life story which identified her by her maiden name. The California court held that because the incidents of plaintiff's trial appeared in the official records of the court the facts surrounding the trial were public and could not support an action for invasion of privacy. *Id.* at 93. Nevertheless, the court held that the use of the plaintiff's true name coupled with those facts "was not justified by any standard of morals or ethics" and was a direct invasion of her privacy. *Id.* Aside from the criticism of the nebulous standard employed by the *Melvin* court, the *Melvin* decision is readily distinguishable on its facts. In *Melvin*, the publication was unrelated to any current issue and made in a medium suggestive of entertainment. *See* Howard, 283 N.W.2d at 302.

[7]Respondents have not challenged the constitutionality of NRS 62.211(3).

court records, the Supreme Court stated that "even the prevailing law of invasion of privacy generally recognizes that the interests of privacy fade when the information involved already appears on the public record. The conclusion is *compelling* when viewed in terms of the First and Fourteenth Amendments and in light of the public interest in a free press." *Id.* at 494-495. (Emphasis added.) Following the *Cox Broadcasting* decision, the Kansas Supreme Court rejected the test of "current newsworthiness" which required a case by case evaluation of the current public interest where the facts published are public facts concerning a present or former public official. The Kansas court reasoned that "[s]uch a test would impose an intolerable burden on the press to publish at the peril of having its news judgment later declared faulty in an action for damages." Rawlins v. Hutchinson Publishing Co., 543 P.2d 988, 996 (Kan. 1975).[8]

The balancing process inherent in the *Restatement* test is more responsive to the conflicting interests of a free press and an individual's right to privacy than the absolute position adopted by the Kansas Supreme Court. Nevertheless, in light of the Supreme Court's holding in *Cox Broadcasting* and the fact that the purpose of this tort is to protect an individual against unwarranted publication of *private* facts, the balance should be weighted in favor of free speech when the publication involves public facts which have been spread upon a public record.[9] The case relied on by the appellant, Briscoe v. Reader's Digest Ass'n, 483 P.2d 34, 57 ALR3d 1 (Cal. 1971),

___

[8]Although *Cox Broadcasting* concerned a publication of a public fact contemporaneously with the rape trial, "[t]here can be no doubt that one quite legitimate function of the press is that of educating or reminding the public as to past history, and that the recall of former public figures, the revival of past events that once were news, can properly be a matter of present public interest." Prosser, *Privacy,* 48 Cal.L.Rev. 383, 418 (1960), *quoted with approval in,* Werner v. Times-Mirror Co., 14 Cal.Rptr. 208, 212 (Cal.App. 1961).

[9]In *Cox Broadcasting,* the Supreme Court stated its reluctance to "embark on a course that would make public records generally available to the media but forbid their publication if offensive to the sensibilities of the supposed reasonable man. Such a rule would make it very difficult for the media to inform citizens about the public business and yet stay within the law. The rule would invite timidity and self-censorship and very likely lead to the suppression of many items that would otherwise be published and that should be made available to the public. At the very least, the First and Fourteenth Amendments will not allow exposing the press to liability for truthfully publishing information released to the public in official court records." *Id.,* 420 U.S. at 495-496.

was issued before the Supreme Court's opinion in *Cox Broad-casting*. In *Briscoe,* the California court added the weight of the state's interest in the integrity of the rehabilitative process along with an individual's interest in privacy to tip the balance in favor of prohibiting the identification of a reformed criminal. Briscoe, 483 P.2d at 40. Although California's interest in the rehabilitation and reformation of the criminal is strong, it is no greater than Georgia's interest in protecting rape victims from untoward publicity and encouraging reporting and prosecution of rapes which the Supreme Court held in *Cox Broad-casting* was overshadowed by the First Amendment.

In the instant case, the disclosure of appellant's conviction for ''hit-and-run'' was closely related to the subject matter of the news story. It documented the many daily hazards which police officers face in the line of duty. The killing of police officers is a subject of grave public interest and, unfortunately, was an item of current public concern because of the recent murder of a police officer. The history of police fatalities in the City of Las Vegas was of equal legitimate public interest. While serving an appropriate news function, the disclosure of the appellant's identity contributed constructively to the impact of the article. It lent specificity and credibility to the report and strengthened the accuracy of the public perception of the gravity of the problem. Because all the the information disclosed was contained in public records, we hold that a reasonable person could not find that the disclosure in this case was not of legitimate public concern under the *Restatement* standard applied in the light of the First and Fourteenth Amendments. This is so even though the publication occurred 20 years after the incident reported therein. *See* Howard, 283 N.W.2d at 303-304. Therefore, the lower court's summary judgment and order dismissing appellant's complaint with prejudice is affirmed.

*Springer* and *Mowbray, JJ.,* concur.

*Gunderson, J.,* dissenting:

Most respectfully, I must dissent.

The majority appear to understand that, pursuant to the balancing test articulated by the Restatement of Torts, the trier of fact—the jury, not this court—should normally decide whether referring to appellant by name constituted a tortious invasion of his right of privacy. Nonetheless, in this instance, the majority have elected to decide the issue as one of law, in favor of respondents Donrey Media Group and the Las Vegas Review-Journal.

In this case as in others, however, I believe we should apply the law as delineated in the Restatement, and should allow appellant to have his day in court.

*Zenoff, Sr. J.,* dissenting:

The majority's espousal of the sacred rights of speech, press and religion is shared by everyone, and no one has a corner on America's devotion to those freedoms of the First Amendment, but since its inception, and longer, the courts have maintained boundaries beyond which some expressions become unlawful invasion of privacy.

Gertz v. Robert Welch, Inc., 418 U.S. 323, 345, 94 S.Ct. 2997 (1974), cited in the majority opinion, said "there is no constitutional value in false statements of fact. Neither the intentional lie *nor the careless error* materially advance society's interests in 'uninhibited, robust and wide open' debate on public issues." (Emphasis added.)

Here, the news article centered on the killing of policemen in the line of duty, which in turn was sparked by the recent murder of a law officer. The policeman in our case was killed in a traffic accident. That Montesano was a passenger in the car which collided with the motorcycle officer speeding in answer to a call was coincidental. He was not chasing the car in which Montesano was riding; the death was not a criminal murder.

The majority opinion scarcely brushes the commitment of the state of Nevada that the state will help a youngster in his attempts to correct the error of his ways. Confidentiality by statute of juvenile offenses and probation reports are promises with a purpose, *i.e.,* to provide incentive that if a youngster or culprit will straighten out and clean up his life, the state will give the security that his past offenses will be behind him and not used as a cloud over him or his family forever.

*Cox,* cited by the majority, involves a case then in progress. Montesano's offense was over twenty years old, and by the time the article was written was old news. Usually, time erodes a public figure status. Wolston v. Reader's Digest Association, Inc., 443 U.S. 157, 99 S.Ct. 2701 (1979). The accident was old, was unrelated to the point of the news article and the identity of the appellant was irrelevant to the story. *Gertz, supra; Wolston, supra;* Briscoe v. Reader's Digest Association, Inc., 483 P.2d 34 (Cal. 1971). Major incidents may bring lasting notoriety to some criminals, but most criminal incidents are of public interest for a short while only, and then slip into obscurity. As to those, publication of an ex-offender's name serves no useful purpose.

Appellant should be permitted to present his case to a jury to decide: (a) his public figure status at the time of the publication of the article; (b) whether respondents acted in a reckless disregard for the harm that might ensue; and (c) to determine the extent of Montesano's damages, if any.