GANNETT CO., t/a the News Journal, and Robert Long, Plaintiffs,

v.

DELAWARE CRIMINAL JUSTICE IN-FORMATION SYSTEM, a Delaware agency; Ronald J. Torgerson, Executive Director of Deljis; Department of Public Safety, a Delaware agency; Karen L. Johnson, Secretary of Public Safety; Delaware State Police; Colonel Allen D. Ellingsworth, Superintendent of State Police; State Bureau of Identification, a Delaware agency; David E. Deputy, Director of the Bureau; M. Jane Brady, Delaware Attorney General, Defendants.

Civil Action No. 98C–03–305–HLA.

Superior Court of Delaware.

Submitted: June 24, 1999.
Decided: Sept. 8, 1999.

Richard G. Elliot, Jr., and Jennifer C. Bebko, of Richards, Layton & Finger, Wilmington, for Plaintiffs.

Michael J. Rich, State Solicitor, and W. Michael Tupman, Deputy Attorney General, of the Department of Justice, for Defendants.

## MEMORANDUM OPINION

ALFORD, Judge.

### I. INTRODUCTION

The News Journal is a daily newspaper distributed throughout Delaware, Southeastern Pennsylvania, New Jersey and Maryland. After the denial of its request for arrest and conviction data pursuant to the Delaware Freedom of Information Act ("FOIA"), 29 *Del. C.,* Ch. 100, The News Journal's owner, Gannett Co., Inc., and reporter Robert Long (collectively "The News Journal") filed the present action for declaratory and mandamus relief against, among others, the Delaware Criminal Justice Information System ("DELJIS"), a State agency ultimately responsible for preventing the unauthorized disclosure of such information.

Before the Court are the parties cross-motions for summary judgment. Defendants' contend that FOIA simply does not apply to arrest and conviction data. Access to that information, Defendants submit, is governed solely by 11 *Del. C.* § 8513 and is not otherwise available for public scrutiny. The News Journal disagrees on two grounds. The News Journal's principal argument is that FOIA, not 11 *Del. C.* § 8513, applies in this case because the requested information does not raise issues of personal privacy. Alternatively, The News Journal submits that it is entitled to the information pursuant to § 8513(b)(3) which permits dissemination of arrest and conviction records for the express purpose of research, evaluative or statistical activities. Finally, to the extent that members of the news media are excluded from the research exception, The News Journal submits that § 8513 violates the First and Fourteenth Amendments to the United States Constitution.

For the reasons that follow, The News Journal's motion is **DENIED** and summary judgment **GRANTED** in favor of Defendants.

### II. BACKGROUND

Because it will be helpful to better understand the facts and issues presented here, the Court will set out the relevant provisions of the Delaware Code before turning to the specific facts of this case.

## A. Title 29, Chapter 100 (Freedom of Information Act)

In 1977, the General Assembly enacted FOIA which opens with a clear and comprehensive policy of disclosure in order to ensure government accountability. The declaration of policy is stated:

It is vital in a democratic society that public business be performed in an open and public manner so that our citizens shall have the opportunity to observe the performance of public officials and to monitor the decisions that are made by such officials in formulating and executing public policy; and further, it is vital that citizens have easy access to public records in order that the society remain free and democratic. Toward these ends, and to further the accountability of government to the citizens of this State, this chapter is adopted, and shall be construed.

29 *Del. C.* § 10001. In order to achieve this goal, FOIA requires the disclosure of all "public records" as provided by § 10002(d). That section defines public records as:

[I]nformation of any kind, owned, made, used, retained, received, produced, composed, drafted or otherwise compiled or collected, by any public body, relating in any way to public business, or in any way of public interest, or in any way related to public purposes, regardless of the physical form or characteristic by which such information is stored, recorded or reproduced....

29 *Del. C.* § 10002(d). However, § 10002(d) also provides fourteen exceptions to the public right of access, including:

(4) Criminal files and criminal records, the disclosure of which would constitute an invasion of personal privacy. Any person may, upon proof of identity, obtain a copy of the person's personal criminal record. All other criminal records and files are closed to public scrutiny. Agencies holding such criminal records may delete any information, before release, which would disclose the names of witnesses, intelligence personnel and aids or any other information of a privileged and confidential nature; [and]

\* \* \* \* \* \*

(6) Any records specifically exempted from public disclosure by statute ....

29 *Del. C.* § 10002(d)(4) & (6).

## B. Title 11, Chapter 85, Subchapter I (State Bureau of Identification, General Provisions).

Several years later, the General Assembly designated the State Bureau of Identification (the "Bureau") as the central state repository for "criminal history record information." 11 *Del. C.* § 8501(b)(1).[1] This phrase is specifically defined as "information collected by criminal justice agencies on individuals consisting of identifiable descriptions and notations of arrests, detentions, indictments, informations or other formal charges, and any disposition arising therefrom, sentencing, correctional supervision and release." 11 *Del. C.* § 8502(2).

The Bureau is administered by the Superintendent of State Police. 11 *Del. C.* § 8503(b). It is the Superintendent's duty to appoint a Director of the Bureau. 11 *Del. C.* § 8503(c). Once appointed, the Director is required to establish procedures to assure that Bureau records are protected from unauthorized access, disclosure or dissemination. 11 *Del. C.* § 8505(b).

What constitutes authorized versus unauthorized dissemination is not within the sole discretion of the Director. Rather, dissemination of Bureau records is governed by 11 *Del. C.* § 8513. That section provides, in pertinent part:

1. The Bureau is equipped and maintained by the State Police as a separate budget unit within the Department of Public Safety. 11 *Del. C.* § 8503(b).

**Dissemination of criminal history record information.**

\* \* \* \* \* \*

(b) Upon application, the Bureau shall, based on the availability of resources and priorities set by the Superintendent of State Police, furnish information pertaining to the identification and *criminal history* of any person or persons of whom the Bureau has a record, provided that the requesting agency or individual submits to a reasonable procedure established by standards set forth by the Superintendent of the State Police to identify the person whose record is sought. These provisions shall apply to the dissemination of criminal history record information to:

(1) Individuals and public bodies for any purpose authorized by Delaware state statute . . . [and];

\* \* \* \* \* \*

(3) Individuals and agencies for the express purpose of *research, evaluative or statistical activities* pursuant to a specific agreement with a criminal justice agency. Said agency shall embody a user agreement as prescribed in § 8514 of this title; [2]

\* \* \* \* \* \*

(c) Upon application the Bureau may, based upon the availability of resources and priorities set by the Superintendent of State Police, furnish information pertaining to the identification and *conviction data* of any person or persons of whom the Bureau has record, provided

that the requesting agency or individual submits to a reasonable procedure established by standard set forth by the Superintendent of State Police to identify the person whose record is sought. These provisions shall apply to the dissemination of conviction data to:

\* \* \* \* \* \*

(2) Members of the *news media,* provided that the use of conviction data shall be limited to the purpose for which it was given, and the requesting media or news agency pays a reasonable fee as set by the Superintendent, payable to the Delaware State Police.

\* \* \* \* \* \*

11 *Del. C.* § 8513 (emphasis added).

■ For purposes of this case, it is important to note that § 8513 draws a clear distinction between criminal history (which includes arrest information) and conviction data. Also implicated here is the apparent distinction between research agencies and members of the news media.

### C. Title 11, Chapter 86 (Delaware Criminal Justice Information System)

Then in 1982, the General Assembly created DELJIS for the express purpose of maintaining "an accurate and efficient criminal justice information system in Delaware consistent with Chapter 85 of this title and applicable federal law and regulations [3] . . . and the right of individuals to be free from improper and unwarranted

---

2. Section 8514 provides that individuals or agencies that receive information pursuant to § 8513(b)(1) & (3) must enter into user agreements with the Bureau. These agreements are required to "[e]nsure the security and confidentiality of the data or information." 11 *Del. C.* § 8514(b)(3). Although the record is not entirely clear, it appears that DELJIS may have permitted the dissemination of "criminal history record information" in the past without requiring a User's Agreement.

3. In 1973, Congress amended the Omnibus Crime Control and Safe Streets Act of 1968 to

require that all state and local criminal justice agencies receiving federal financial support for the operation of criminal intelligence systems "assure that the security and privacy of all [criminal history] information is adequately provided for and that information shall only be used for law enforcement and criminal justice and other lawful purposes." 42 U.S.C. § 3789g(b). In 1975, the Law Enforcement Assistance Administration issued regulations to carry out this mandate. *See* 28 C.F.R. Part 20. Section 8513 of the Delaware Code mirrors these regulations.

intrusions into their privacy." 11 *Del. C.* § 8601. This agency is controlled by a 14 member Board of Managers (the "Board"), nine of whom are entitled to vote. 11 *Del. C.* § 8603(c).[4] The Board is charged with the management, operation and maintenance of computer hardware, software and communication systems collectively known as the Criminal Justice Information System ("CJIS"). 11 *Del. C.* § 8606(6).

This comprehensive data system supports the agencies and courts within Delaware's criminal justice system by providing access to vast amounts of data regarding individuals who have been arrested, or against whom formal criminal charges have been instituted. CJIS databases contain numerous fields of information. Thus, access to this information makes it possible to analyze how the various agencies of the criminal justice system perform, including the various police departments, the Attorney General's Office, the courts, corrections and probation. It is possible, for example, to determine whether the recidivism rate is increasing or decreasing; whether certain police departments are arresting more minorities than others; whether minorities are given harsher sentences; which police department has the highest conviction rate; and how women are treated by the system.

Although useful and undoubtedly of public interest, access to this data is limited to ensure "the right of individuals to be free from the improper and unwarranted intrusion into their personal privacy." 11 *Del. C.* § 8601. Pursuant to 11 *Del. C.* § 8604, the Board is charged with protecting against such intrusions by "insur[ing] that the [Bureau] and all other criminal justice agencies collecting, storing or disseminating such information comply with ... Chapter 85 of [Title 11]." *Id.*

### D. Prelude to the Present Litigation

For approximately the last eleven years, DELJIS and the Bureau have permitted access to CJIS for the purpose of research, evaluative and statistical activities pursuant to 11 *Del. C.* § 8513(b)(3).[5] Apparently wanting to conduct its own study, The News Journal requested access to the CJIS.

On October 15, 1993, The News Journal submitted a FOIA request to DELJIS for electronic copies of certain CJIS databases containing the following information:

[T]he records of every criminal conviction since 1972 including at least the following information for each record; nature of the crime; charges at arrest, charges of which the person was convicted, charges nolle prosequi, charges dropped, charges of which the person was acquitted, charges to which a guilty plea was entered prior to conviction, location of arrest, date of crime, date of trial, date of sentence, prosecuting attorney, defendant's attorney, presiding judge, sentencing judge, location of trial, flag for jury trial, verdict on each charge, sentence for each conviction (jail, files, victim compensation, probation), portion of sentence suspended, portion of sentence mandatory, flag for misdemeanors, flag for mandatory life without parole, flag for death sentence, date of birth or defendant, race of defendant, gender of defendant, broad geographical description of residence of defendant, prior convictions of defendant, record of juvenile convictions, flag for fist time offender, bail history, pretrial detention history, participation in special prison programs, date of release from prison, date of projected release from

---

4. The voting members are an eclectic bunch, drawn from, among other sources: the State Police; the Department of Collection; the Division of Youth Rehabilitative services; the Department of Justice; the Office of the Public Defender; and two members designated by the Chief Justice of the Delaware Supreme Court.

5. The record details five such incidents which need not be recounted here.

prison and the date of eligibility for parole.

Although The News Journal had not requested names and identification numbers, the Board initially denied this request given the possibility that an individual's criminal history could be pieced together from the various fields of information. However, after consultation with the Department of Justice ("DOJ"), the Board proposed a compromise position based on its belief that The News Journal was a research agency within meaning of 11 *Del. C.* § 8513 and that any lingering confidentiality concerns could be addressed with a user's agreement. After The News Journal signed a user's agreement in May 1995, the Board provided The News Journal with over one hundred fields of information, limited, however, to felony arrest and conviction data. In 1996, the Board agreed to update this information.[6]

On September 23, 1997, The News Journal made the request which is the subject of the present litigation. The 1997 request stated, in part:

> This request expands our earlier request by adding non-identifying fields of data not requested before. Also, we would like to receive information on all cases, including misdemeanor and traffic cases.

Attached to this request was a list containing some three hundred individual fields of information contained in seven different CJIS databases. Concerned about the scope of The News Journal's latest request, the Board again sought legal advice. This time, however, the DOJ advised the Board that the information was not subject to disclosure under FOIA or the research provision of 11 *Del. C.* § 8513(b)(3), but rather, fell within subsection (c) which limits the news media to conviction data only. For whatever reason, the Board did not officially deny the 1997 request. Rather, the Board turned the whole matter over to the Bureau for a determination as to

whether The News Journal was entitled to bulk conviction data or merely entitled to conviction data on an individual-by-individual basis as provided by the regulations promulgated by the Superintendent of State Police.

By letter dated February 4, 1998, the State police advised The News Journal that it was entitled to conviction data, but only upon request for conviction records of specifically identified individuals. This suit followed.

### III. STANDARD OF REVIEW

■■■ A motion for summary judgment requires the Court to examine the record to determine whether there are any genuine issues of material fact or whether the evidence is so one-sided that one party should prevail as a matter of law. *Burkhart v. Davies,* Del.Supr., 602 A.2d 56, 59 (1991). If the Court, after viewing the record in the light most favorable to the nonmoving party, finds no genuine issue of material fact, summary judgment is appropriate. *Hammond v. Colt Indus. Operating Corp.,* Del.Super., 565 A.2d 558, 560 (1989). Summary judgment is not appropriate, however, when the record indicates that a material fact is in dispute or if it seems desirable to inquire into the facts in order to clarify the application of the law to the circumstances. *Wilson v. Triangle Oil Co.,* Del.Super., 566 A.2d 1016, 1018 (1989).

### IV. DISCUSSION

■■■ In determining whether The News Journal is entitled to electronic copies of anonymous arrest and conviction data pursuant to FOIA, the Court must first address Defendants' argument that 11 *Del. C.* § 8513 is a self-contained system of disclosure which completely exempts CJIS databases from the definition of a "public record" as provided in 29 *Del. C.*

---

**6.** The News Journal admits that it never did any research or statistical studies based on

the information received in 1995 or 1996.

§ 10002(d). While § 10002(d)(6) does provide that any records exempted by statute are not "public records" for purposes of FOIA, § 8513 does not expressly exempt all CJIS data. At most, § 8513 works to prevent the disclosure of "criminal history record information" which is limited to "information ... on *individuals* consisting of *identifiable* descriptions and notations of arrests." 11 Del. C. § 8502(2) (emphasis added). If the General Assembly desired for § 8513 to preempt FOIA with regard to every piece of information contained in CJIS databases, it could easily have done so.

■ Having concluded that § 8513 does not completely preempt FOIA, the Court must next consider whether FOIA itself excepts information in CJIS databases from the definition of a "public record." Although FOIA expressly excludes criminal files and criminal records, this exception applies only to the extent that "disclosure ... would constitute an invasion of personal privacy." 29 *Del. C.* § 10002(d)(4). Clearly then, criminal files and records are not categorically excluded from the scope of FOIA, as are documents relating to criminal investigations. *See Nasir v. Oberly,* Del.Super., C.A. No. 84C–AU–56, 1985 WL 189324, at *1, Bifferato, J. (1985) (denying request for documents relating to criminal investigation pursuant to 29 *Del. C.* § 10002(d)(3)). It follows

that some of the information contained in CJIS databases may be a matter of public record, depending, of course, on whether disclosure of CJIS information would constitute an invasion of personal privacy.[7]

■ While The News Journal may be entitled to some of the requested information pursuant to FOIA, the Court concludes that the present request is overly broad. The Court recognizes that The News Journal has not requested names and identification numbers, and that what remains is arguably raw statistical information which undoubtedly lends itself to analyzing the performance of various agencies and individuals within the criminal justice system. However, even 'assuming that available scrambling methods are adequate to safeguard names and identification numbers, the Court still concludes that permitting disclosure of more than 300 fields of CJIS information would constitute an invasion of personal privacy.[8]

Scrambling names and identification numbers does nothing to address the likelihood that it may be possible to recreate an individual's criminal history from the vast amount of informational fields contained in The News Journal's request.[9] For example, it may be possible to deduce a particular individual's name and thereby recreate arrest and/or conviction records by simply cross-referencing multiple fields such as offender race, gender and occupa-

---

7. Fairly read, § 10002(d)(4) requires this Court to make a threshold determination as to whether disclosure of the requested information would constitute an invasion of personal privacy. The Court notes that the inquiry under Delaware's FOIA is somewhat different from that under federal law. In *U.S. Department of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 776, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989), the Supreme Court held that a court reviewing the denial of a request for rap-sheet information must balance the public interest in disclosure against the individual's right to personal privacy. That decision, however, was based on the fact that the exemption at issue specifically referred to "unwarranted" invasions of privacy. *See* 5 U.S.C. § 552(b)(7)(C). In contrast, the applicable statute here, 29 *Del. C.* § 10002(d)(4), exempts all criminal records

and files to the extent that disclosure would constitute an invasion of personal privacy.

8. The Court recognizes that the burden of proof here is upon Defendants, as the custodians of the database, to justify their refusal to disclose the requested information. 29 *Del. C.* § 10005(c). While Defendants have done little to actually prove the existence of privacy concerns, the Court is satisfied, based solely on the immense scope of the 1997 request, that legitimate privacy concerns exist here.

9. The fact that The News Journal is amenable to signing a user's agreement in order to prevent data manipulation is of little importance. Rather, the dispositive factor here is the mere possibility of such misuse.

tion. And, because this type of personal information is not directly obtainable under FOIA, it would be improper to permit the dissemination of this information through indirect means.

■ The next issue for consideration is whether The News Journal is entitled to the requested information pursuant to 11 *Del. C.* § 8513. As noted, § 8513 draws a clear distinction between criminal history (which includes sensitive arrest information) and mere conviction data. While subsection (c)(2) gives members of the news media a limited right of access to identifiable conviction data, that is not at issue here. Rather, The News Journal submits that it is entitled to arrest and conviction data for the purpose of research, evaluative and statistical activities under subsection (b)(3). The Court disagrees for two reasons.

To begin with, subsection (c)(2) expressly relegates the news media to conviction data. If the General Assembly intended for members of the news media to also have access to sensitive arrest information under the guise of being a research agency within meaning of subsection (b)(2), it would have provided as much. Next, subsection (b)(3) requires any such research agency to be acting pursuant to a "specific agreement with a criminal justice agency," in addition to the required user's agreement. This language contemplates a close working relationship between a criminal justice agency and a research agency. It therefore appears that subsection (b)(3) affords a criminal justice agency discretion as to which, if any, research agency it wishes to engage for the purpose of conducting research; it does not provide the research agency with an affirmative right of access separate and distinct from FOIA. As a result, the Court concludes that The News Journal is not entitled to electronic copies of CJIS databases pursuant to § 8513(b)(3).

■ The News Journal, however, submits that this construction of § 8513(b)(3) violates the First Amendment's guarantee of a free press and the Equal Protection Clause of the Fourteenth Amendment. With regard to the alleged First Amendment violation, The New Journal points out that its argument is not based on notions of commercial free speech. Rather, The News Journal contends that § 8513(b)(3) violates its right to publish under the First Amendment because it limits the media's access to research and statistical data without any rational basis. Oddly, The News Journal relies primarily on *United Reporting Publishing Corp. v. California Highway Patrol*, 9th Cir., 146 F.3d 1133 (1998), *cert. granted sub nom., Los Angeles Police Department v. United Reporting Publishing Corp.*, 525 U.S. 1121, 119 S.Ct. 901, 142 L.Ed.2d 901 (1999), a commercial speech case, for this assertion.

In *United Reporting,* a California statute prohibited entities from publishing the names of persons arrested to the extent that they were doing so for commercial purposes. Because United was selling this information to attorneys, insurance companies, drug and alcohol counselors, and driving schools, it was prohibited from publishing the arrest information, notwithstanding the fact that the statute allowed journalists, academicians and curiosity seekers to publish the same information. The court held the statute unconstitutional because "[i]t is not rational for a statute which purports to advance the governmental interest in protecting the privacy of arrestees to allow the names and addresses of the same to be published in any newspaper, article or magazine in the country so long as the information is not used for commercial purposes." *Id.* at 1138.

■ The relevance of *United Reporting* to this case is unclear. The New Journal appears to be arguing that, because § 8513 prevents the publication of CJIS information, it therefore implicates the prior restraint precepts of the First Amendment. This is tantamount to argu-

ing that its constitutionally protected right to publish somehow entitles it the information in the first instance. It is well settled, however, that "[t]here is no constitutional right to have access to particular government information, or to require openness from the bureaucracy .... The Constitution itself is neither a Freedom of Information Act nor an Official Secrets Act." *Houchins v. KQED, Inc.*, 438 U.S. 1, 3, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978). And, while release of the requested information may be good, desirable or expedient, that should not be confused with what is constitutionally commanded by the First Amendment. *See Id.* at 13, 98 S.Ct. 2588.[10]

The final matter for consideration here is whether the disparate treatment of the news media in § 8513, as compared to other research organizations, violates the Equal Protection Clause of the Fourteenth Amendment.[11] The answer to this question necessarily depends on whether the classification drawn by the legislature is rationally related to the legitimate government objective of protecting the right of individuals to be free from improper and unwarranted intrusions into their privacy.

In answering this question, the Court would again point out that § 8513(b)(3) does not provide a general right of access to arrest data. It simply permits the Director of the Bureau to disclose otherwise private information to research agencies working directly with a particular criminal justice agency. When viewed in this light, the classification at issue here does not appear to specifically single out the members of the news media. Rather, it excludes a vast majority of the general public. And there is good reason for this. Because the accuracy and completeness of arrest records is dubious, posing a much greater risk of harm through widespread dissemination than mere conviction data, it is reasonable for the General Assembly to limit the dissemination of such information to the greatest extent possible in order to safeguard against intrusions of personal privacy. Accordingly, the Court concludes that § 8513 does not violate the Equal Protection Clause of the Fourteenth Amendment.

### V. CONCLUSION

While The News Journal may be entitled to some of the requested information pursuant to FOIA, the Court concludes that the 1997 request was properly denied in order to protect against unwarranted invasions of personal privacy. Nor can The News Journal avail itself of 11 *Del. C.* § 8513(b)(3). Because The News Journal is not entitled to receive all of the requested data pursuant to FOIA or § 8513(b)(3), its motion for summary judgment is **DENIED**. Accordingly, summary judgment is **GRANTED** in favor of Defendants.

**IT IS SO ORDERED.**

---

10. The News Journal does argue that it has a constitutional right to CJIS information because the data represents statistical information on judicial records. While there may be a historical right of access to some information connected with the judicial process, *see Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), the information requested here is not limited to judicial record information. Moreover, this statute does not foreclose other avenues of accessing court records of public judicial proceedings. Section 8513 itself provides the media with a right of access to identifiable conviction records.

11. The News Journal's actual argument was that the State discriminated between Merrit Wallick, who made the original request in 1993, and Robert Long, who made the 1997 request. Having concluded, however, that § 8513(b)(3) does not provide members of the news media with an unrestricted right of access, the Court has analyzed this as a facial challenge to the statute.