**BOARD OF MANAGERS OF the DELAWARE JUSTICE INFORMATION SYSTEM, an agency of the State of Delaware, Ronald J. Torgerson, Executive Director of the Board of Managers, State Bureau of Identification, an agency of the State of Delaware, and Captain David E. Deputy, Director of the State Bureau of Identification, Plaintiffs,**

**v.**

**GANNETT CO., t/a The News Journal, Defendant.**

**C.A. No. 01C–01–039WLW.**

Superior Court of Delaware, Kent County.

Submitted: June 19, 2002.
Decided: Sept. 30, 2002.

Michael J. Rich, and W. Michael Tupman, Deputy Attorneys General, Dover, for the State of DE.

Richard G. Elliott, Jr., and Jennifer C. Bebko, of Richards, Layton & Finger, Wilmington, for the Gannett Co., t/a The News Journal.

## OPINION

WITHAM, Judge.

### I. *Introduction*

This case involves the disclosure of information under the Delaware Freedom of Information Act (FOIA). This Court understands the importance of its decision concerning this disclosure given the fact that once the information is made public, the status quo can not be restored. Under FOIA the State as the custodian of the records has the burden to "to justify the denial of access to the records."[1] Here, the plaintiffs have not met their burden in this case, therefore, Declaratory Judgment is denied in part. However, while the defendant can receive the requested data it will not be permitted to receive arrest zip codes, grids or any other geographic information; non-conviction data, any information relating to the identity of police officers, or to the extent that it is asked for data relating to minors.

### II. *Facts*

This litigation began in 1997 when the Gannett Co., t/a The News Journal ("News Journal") sought from Delaware Criminal Justice Information System ("DELJIS") a snapshot of a ten-year database containing over 300 fields of information, under FOIA. The News Journal is seeking this data from DELJIS ostensibly for the express purpose of trying to study the effectiveness of Delaware's criminal justice system. After the request was denied the News Journal sued DELJIS in the Superi-

---

1. 29 *Del. C.* § 10005.

or Court.[2] In *Gannett I* Judge Alford concluded that the News Journal's current request was overly broad, and based "solely on the immense scope of the 1997 request" that permitting this request would be an invasion of privacy.[3] In 2000, the News Journal met with the DELJIS and other state officials in an attempt to work out a compromise agreement limiting the fields it asked for in its original FOIA request. An agreement was reached and DELJIS, with the advice of the Attorney General, approved a settlement agreement giving the News Journal most of the fields it requested. Then DELJIS, after apparent further consultation, determined that the release of the requested data would violate FOIA and Chapters 85 and 86 of Title 11 because it would lead to an invasion of personal privacy.

On February 1, 2001, DELJIS sought relief from this Court and filed the current action for declaratory judgment. Shortly thereafter both parties moved for summary judgment which was denied.[4] Based upon the Court's conclusion that there was still an issue of fact to be determined, an evidentiary hearing was requested. The evidentiary hearing was on the narrow issue of whether the News Journal could take vertical criminal histories and cross reference them with other sources to determine names to correspond with the vertical histories.

To begin, it is important to note what data the News Journal is currently seeking. The News Journal is requesting data related to the criminal justice system over a ten-year period. The News Journal has significantly reduced its original request from over 300 fields to approximately 185

fields. In its request the News Journal does not seek any direct identifiers such as defendant's name, social security number, address, location of the crime or the victim's name. The News Journal has removed from its request most indirect identifiers such as date of birth, skin color, ethnic origin, marital status, and occupation. Further, during trial based upon DELJIS expert's claim that the arrest zip code and grid numbers were key factors to re-identify individuals, the News Journal withdrew its request for these fields of data. Currently the only indirect identifiers that the News Journal requests are age, race, and sex. The News Journal is also requesting a fictional linking number that connects the various fields of data together. This number would be used solely for this database and would not correlate to any "real world" identifier. This is important for the News Journal to accurately access the data since without the linking number there would be no way to distinguish between first time offenders and habitual offenders; thus, the News Journal could not accurately study sentencing trends.

During the evidentiary hearing both sides produced experts to determine whether the News Journal could recreate an individual's identity from the data requested. The News Journal's experts, David Milliron and Merritt Wallich, testified that without some working knowledge of a particular offenders history, the linking numbers would not supply any additional information that could lead to the identification an unidentified individual. News Journal admits that in a handful of truly unique cases such as murder, sex

**2.** *Gannett Co. v. Del. Criminal Justice Info. Sys.,* 768 A.2d 508 (Del.Super.1999), aff'd, 765 A.2d 951 (Del.2000) (TABLE) (*"Gannett I"*).

**3.** *Id.* at 515 n. 8.

**4.** *Bd. of Mangers of the Del. Justice Info. Sys. v. Gannett,* 2001 Del Super. Lexis 538 (*"Gannett II"*).

offenses, or shocking crimes that it is possible to "spot the person" in the database. However, this identification is not possible because of the linking numbers, rather these individuals would be identifiable by the nature of the crime alone. All the experts agree that merely creating a fictitious linking number would not invade personal privacy. The only way privacy would be implicated is if an individual could be re-identified, and through the linking number linked to a specific vertical history.

DELJIS offered two experts, John P. O'Connell, Jr. and Dr. Latanya A. Sweeney. Mr. O'Connell testified that re-identification would be possible based on publicly available police blotters and newspaper articles. However, on cross examination he admitted that there was no way to re-identify without publicity or without police blotters that were generated during the ten year snapshot that the News Journal is requesting. Furthermore, since only current police blotters are available there is no evidence that the News Journal has access to blotters during that ten year period other then what is currently available. Based upon this testimony at most the News Journal would be able to identify 1%–2% of the publicized high profile cases. DELJIS other expert, Dr. Sweeney, is a renowned data privacy expert. Dr. Sweeney testified that she could cross reference the requested information from DELJIS with publicly available voter registration databases (specifically www.voterlistsonline.com and the Department of Election Database) in order to accurately identify a percentage of individuals present in the DELJIS database.[5] Nevertheless, all of this expert's testimony hinges on the presence of a geographic limitation such as arrest zip codes or grid numbers, and there is no testimony that indicates that if DELJIS did not include a geographic identifier that re-identification would be possible.

All the experts in this case agree that all the information that the News Journal is requesting is a matter of public record. Further, there was testimony that if the News Journal desired to target an individual for a story that there are fast and accurate ways for the News Journal to obtain that persons criminal history without using the data requested from DELJIS.

### III. *Discussion*

The goals of openness in the government and protection of privacy cannot both be accomplished without some sacrifice to each. The determination of where the public's right to know ends and the individuals's right to privacy begins involves drawing lines that may seem obvious in cases where either the goals of openness in the government or protection of privacy is unquestionably paramount, but becomes increasingly difficult in cases where there are strong state interests in both an individuals's right to privacy and the public's need to monitor its government.[6]

The Delaware Freedom of Information Act (FOIA) acknowledges this delicate balance between privacy and openness of government, and through exceptions to its general rule of disclosure and reference to other Delaware statutes, FOIA provides

---

5. The actual percentage is hotly debated, it could be as high as 9.2% or as low as 0.1%–1.6%.

6. Margaret Westin, *The Minnesota Government Data Practices Act: A Practitioner's Guide and Observations on Access to Government Information*, 22 Wm. Mitchell L. Rev. 839, 843 (1996).

some guidance for how this Court should weigh the two competing goals.

### A. Statutes Involved in This Case

■ In the case at bar the two sets of statutes involved are FOIA 29 *Del. C.* § 10001 *et seq.* (hereinafter FOIA), and DELJIS's enabling statutes 11 *Del. C.* § 8501 *et seq.*; 11 *Del. C.* § 8601 *et seq.* (commonly referred to as Chapters 85 and 86 respectively). The rules of statutory construction requires that for "consistency in effectuating the manifest intent of the General Assembly laws be construed with reference to each other to retain viability of pre-existing law." [7] Furthermore, in defining what is a public record FOIA specifically incorporates other statutes and the common law.[8] Therefore, this Court will give equal weight to the two sets of statutes when determining what information is available under FOIA.

### B. Freedom Of Information Act:

■ FOIA should be construed in light of its Declaration of Policy which states:

It is vital in a democratic society that public business be performed in an open and public manner so that our citizens shall have the opportunity to observe the performance of public officials and to monitor the decisions that are made by such officials in formulating and executing public policy; and further, *it is vital that citizens have easy access to public records in order that the society remain free and democratic.* Toward these ends, and to further the accountability of government to the citizens of this State, this chapter is adopted, and shall be construed.[9]

■ This policy of free access and disclosure must be balanced against an individual's right to keep personal information from public scrutiny. To achieve this balance, the drafters of FOIA determined that all documents defined as " public records" under FOIA are to be freely accessible to all citizens; however, to protect individual privacy the drafters carved out exceptions to the definition of what constitutes a "public record." [10]

Under 29 *Del. C.* § 10002(d) a "public record" is broadly defined as:

Information of any kind, owned, made, used, retained, received, produced, composed, drafted or otherwise compiled or collected, by any public body, relating in any way to public business, or in any way of public interest, or in any way related to public purposes, regardless of the physical form or characteristic by which such information is stored, recorded or reproduced.[11]

To limit this broad definition there are fourteen types of documents which are specifically deemed not public.[12] Two exceptions are important to the present case. First, § 10002(d)(4) which states that the following is not a public record for purposes of this Act " Criminal files and crimi-

---

**7.** 1 *Del. C.* § 301; *Del. v. Pennell,* 1989 WL 167445 \*4, 1989 Del.Super. Lexis 524, \*12 (1989) (construing meaning of public record under FOIA by interpreting statute concerning disclosure of jurors names), *aff'd,* 571 A.2d 735 (Del.1989); *see also Silverbrook Cem. v. Bd. of Assmt. Review,* 355 A.2d 908, 910 (Del.Super.1976), *aff'd in part, rev'd in part,* 378 A.2d 619 (Del.1977).

**8.** 29 *Del. C.* § 10002(d)(6) (For purposes of this statute the following shall not be deemed public records: ... (6) Any records specifically exempted from public disclosure by statute or common law.).

**9.** *Id.* at § 10001 (emphasis added).

**10.** *Id.* at § 10003.

**11.** *Id.* at § 10002(d).

**12.** *Id.*

nal records, the disclosure of which would constitute an invasion of personal privacy.... Agencies holding such criminal records may delete any information, before release, which would disclose the names of witnesses, intelligence personnel and aids or any other information of a privileged and confidential nature." Second, § 10002(d)(6) states that "Any records specifically exempted from public disclosure by statute or common law" are not considered public records under FOIA.

■ In order to determine if DELJIS should disseminate the information that the News Journal is requesting, this Court must determine that the data does not fall within either exception to the definition of a public record. Turning now to the first exception, criminal records can not be disclosed if such disclosure "would constitute an invasion of *personal* privacy." [13] This is not a blanket exemption for all criminal records or files. Rather, in evaluating whether a request for information lies within the scope of the exemption, this Court must balance the extent to which

the disclosure would serve FOIA's core purpose of "easy access to public records ... to further the accountability of the government" [14] against an individual's right to be free from invasion of privacy.

■ As a threshold matter, a criminal record will only be exempt if its dissemination actually would be an invasion of *personal* privacy. Privacy as it relates to FOIA is different from privacy as defined in a cause of action for invasion of privacy, it is also different from the Constitutional right to privacy. [15] As of yet Delaware has not defined privacy as it relates to FOIA. In this case the News Journal relies upon Delaware cases involving the tort of invasion of privacy. [16] These cases may be useful as guidance in determining the meaning of FOIA privacy in Delaware; however, the definition of privacy should not hinge on the definition offered in tort cases.

In *Department of Justice v. Reporter Committee for Freedom of the Press* [17] the Supreme Court discusses the statutory

13. *Id.* (emphasis added).

14. *Id.* at § 10001.

15. *Dep't of Justice v. Reporter Comm. for Freedom of the Press,* 489 U.S. 749, 762 n. 13, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) ("The question of the statutory meaning of FOIA is, of course, not the same as the question whether a tort action might lie for invasion of privacy or the question whether an individual's interest in privacy is protected by the Constitution.").

16. The Supreme Court of Delaware has defined "invasion of the right to privacy" as: "the unwarranted appropriation or exploitation of one's personalty, the publicizing of one's affairs with which the public has no legitimate concern or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibility." *Reardon v. News Journal Co.,*

164 A.2d 263, 266–67 (Del.1960). The Court further states that the "general purpose of protecting the right to privacy relates to one's private life, not when the life has become a matter of legitimate public interest." *Id.* When determining if there is a cause of action for privacy the courts in this jurisdiction have also balanced the right of the media to publish newsworthy events against an individual's right to privacy. *Wallace v. Capital Cities,* 1989 WL 100423, *1, 1989 Del.Super. Lexis 319, *1. The courts further state that "One who either seeks the public eye or who unwillingly comes into focus because of his own fault, as in a criminal case, cannot complain of publicity if the publication does not violate ordinary notions of decency." *Id.* (citing *Barbieri v. News Journal Co.,* 189 A.2d 773, 774 (Del.Super.1963)).

17. 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) (holding that rap sheets that identified the subject's name were not subject to disclosure under FOIA).

meaning of privacy as it relates to the Federal Freedom of Information Act. The Supreme Court defines privacy as it relates to FOIA by using two main sources—the common law, and the literal understanding of privacy. The Court begins its discussion of privacy for purposes of FOIA by looking at the common law concerning privacy. The common law of privacy relies to some extent on the degree of dissemination.[18] "The common law recognized that one did not necessarily forfeit a privacy interest in matters made part of the public record, albeit the *privacy interest was diminished* and another who obtained the facts from the public record might be privileged to publish it."[19] However, the Court specifically noted that there may be some privacy interest "inherent in the non-disclosure of certain information even when that information may have been at one time public."[20]

After describing the common law definition, Supreme Court describes the literal understanding of privacy which "encompasses the individual's control of information concerning his or her persons."[21] Here, the Court uses the dictionary definition of privacy which states "information may be classified as 'private' if it is 'intended for or restricted to the use of a particular person or group or class of persons: not freely available to the public.' "[22] An-

other aspect of the literal definition of privacy the Court noted is that " '[T]he right of privacy is the right to control the flow of information concerning the details of one's individuality.' "[23]

Even though under this formation of privacy there is a diminished expectation of privacy in records that are already public; however, there seems to be a distinction between information that is in multiple areas that can all be found publicly and information that has been compiled in a centralized database. As the U.S. Supreme Court stated:

> Recognition of this attribute of a privacy interest supports the distinction, in terms of personal privacy, between scattered disclosure of the bits of information contained in a rap sheet and revelation of the rap sheet as a whole. The very fact that federal funds have been spent to prepare, index, and maintain these criminal-history files demonstrates that the individual items of information in the summaries would not otherwise be "freely available" either to the officials who have access to the underlying files or to the general public. Indeed, if the summaries were "freely available," there would be no reason to invoke the FOIA to obtain access to the information they contain. Granted, in many contexts the fact that information is not

---

18. *Id.* at 764, 109 S.Ct. 1468.

19. *Id.* at 764 n. 15, 109 S.Ct. 1468 (emphasis added) (citing *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 at 494–495, 95 S.Ct. 1029, 43 L.Ed.2d 328). The Court further noted that "[M]erely because [a fact] can be found in a public recor[d] does not mean that it should receive widespread publicity if it does not involve a matter of public concern" Id. (quoting W. KEETON, D. DOBBS, R. KEETON, & D. OWENS, PROSSER & KEETON ON LAW OF TORTS § 117, p. 859 (5th ed.1984)). In the case at bar, the News Journal has shown a public concern in the information that it will be

publishing so this cautionary limitation is not really an issue here.

20. *Id.* at 767, 109 S.Ct. 1468.

21. *Id.* at 763, 109 S.Ct. 1468.

22. *Id.* at 763–64, 109 S.Ct. 1468 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1804 (1976)).

23. *Id.* at 764 n. 16, 109 S.Ct. 1468 (quoting *Project, Government Information, and the Rights of Citizens*, 73 MICH. L. REV. 971, 1225 (1974–1975)).

freely available is no reason to exempt that information from a statute generally requiring its dissemination. But the issue here is whether the compilation of otherwise hard-to-obtain information alters the privacy interest implicated by disclosure of that information. Plainly there is a vast difference between the public records that might be found after a diligent search of courthouse files, county archives, and local police stations throughout the country and a computerized summary located in a single clearinghouse of information.[24]

The information that the News Journal is requesting from DELJIS is a compilation of criminal files similar to the computerized database that is mentioned above by the Supreme Court. This Court recognizes that these databases which compile vast amounts of personal data almost by their very nature threaten individual privacy.[25] However, disclosure of databases, like any other information, must be looked at on a case-by-case basis, and should only be excluded from FOIA if it falls into one of the enumerated exemptions to FOIA. Therefore, the fields of data at issue here should only be exempt if the State proves that disclosure would constitute an invasion into personal privacy. Here, unlike in the *Reporters* case, the News Journal is not requesting the names of the individuals in the database to be attached to the fields of data. The News Journal also did not ask for any other direct identifiers such as the social security numbers, addresses, victim names, or SBI number. Although, the News Journal does request fictional linking numbers to

link the data in the various fields this number would not be specifically linked to an individual beyond this database snapshot that the News Journal is requesting. The real issue here, and the subject of the evidentiary hearing, is whether based on the indirect identifiers that the News Journal requests, an individual can be re-identified which would allow the News Journal to recreate vertical criminal histories. For the reasons discussed below this Court determines that the State, as the custodian of the requested records, has not meet its burden concerning this issue.

The first of the State's experts testified that one could use police blotters, and previous newspaper articles to re-identify individuals. However, on cross examination this witness admitted that he never tried to re-identify an individual using the limited fields that the New Journal has requested. Further, no evidence was offered that indicated that the News Journal has access to police blotters that were issued during the ten-year snapshot that the News Journal requested. The principal privacy expert from the State, Dr. Sweeney, testified that she could use the indirect identifiers requested to re-identify individuals using voting databases. Her testimony hinged upon using geographic data such as zip codes and grid numbers; however, based on this concern the News Journal withdrew its request for such data. After the withdrawal, there is no testimony that there nevertheless remains a privacy concern. This Court finds that neither expert's testimony proves that there is in fact a real privacy concern presented by the evidence.

24. *Id.* at 764, 109 S.Ct. 1468.

25. This understanding is implicit in Judge Alford's decision when she summarily stated that the News Journal's request for "more then three hundred fields of data would constitute an invasion of personal privacy."

*Gannett I,* 768 A.2d at 515. This determination that the request would be an invasion of personal privacy was "based solely on the immense scope of the 1997 request," rather then any proof of a legitimate privacy concern offered by the State. *Id.*

There are three other privacy concerns that were raised during this litigation. The first privacy concern is the identity of the 1%–2% of highly publicized individuals where re-identification is admittedly plausible. As noted above according to both Delaware privacy law and the Supreme Court's analysis of privacy, someone who through his own fault, such as committing a highly publicized crime, has a lower expectation of privacy then the normal individual. Furthermore, these people are already known to the News Journal and if the News Journal wanted their criminal history there are fast and accurate tools that can be currently utilized to get the histories. The News Journal does not need the requested databases to learn the identity of this 1%–2% of people, so there would not be an invasion of privacy by giving the requested information.

The second privacy concern is the inclusion of the names of the arresting officers. Delaware's FOIA exempts from disclosure "criminal files and records, the disclosure of which would constitute an invasion of personal privacy.... Agencies holding such criminal records *may delete any information, before release, which would disclose names of witnesses, intelligence personnel or aides,* or any other information of a privileged or confidential nature." [26] DELJIS' experts testify to the problems with giving over the names of the arresting officers since these officers are not necessarily the same as the officer that worked the case. One reason these names may not be the same is because one officer may sign the arrest warrant to protect an undercover officer's true identity, and it was testified that the criminal might confuse the two officers and "go after" the arresting officer by mistake. Since many people that have been arrested carry grudges which last for years, officer's privacy and safety would be compromised by such a disclosure.[27] There is also an issue of the fact that police identification numbers are assigned to an officer until retirement and then reassigned to new officers. These discrepancies may make this data not reliable for the type of investigatory reporting for which the News Journal desires the information. Furthermore, the federal courts have determined that officers names and identifying information are not disclosable under FOIA even when the officer has "testified in open court."[28] For the forgoing reasons, this Court concludes that the release of police, probation and parole officers names and identification numbers could jeopardize officers privacy and safety. Therefore, since FOIA specifically allows DELJIS to remove information that identifies an officer, disclosure of information relating to the identity of any police officer is not required.

The third privacy concern is the inclusion of non-conviction data. DELJIS' privacy expert does explain that people that are not convicted may have a higher expectation of privacy. The News Journal contends that this data like all the rest of the requested data is already publicly available, and if a non-convicted person wishes to regain their privacy concerning this data they could have their record expunged. This Court does not purport to

**26.** *29 Del. C.* § 10002(d)(4).

**27.** *Baez v. United States Dep't of Justice,* 647 F.2d 1328, 1339 (D.C.Cir.1980) (explaining that some people carry grudges against officers for years and seek excuses to harass the officer); *see also Nix v. United States,* 572 F.2d 998 (4th Cir.1978) (allowing the Government to withhold the names and identification numbers of FBI agents from FOIA requests because public identification of FBI agents could subject then to harassment).

**28.** *Neely v. FBI,* 208 F.3d 461, 465 (4th Cir. 2000).

determine the privacy expectation concerning this data in the abstract. However, given the testimony as shown above re-identification is not possible so in this case there can be no privacy objection to this data. This conclusion does not end the debate on this issue because under Chapter 85 non-conviction data is treated differently from conviction data so this concern will be addressed below.

### C. *Chapters 85 and 86 of Title 11*

■ The second exception in the FOIA statute that is relevant to the case at bar is § 10002(d)(6) which states that "Any records specifically exempted from public disclosure by statute or common law" are not considered public records under FOIA. The dissemination of criminal record and files is governed by DELJIS's enabling statutes found in Chapters 85 and 86 of the Delaware code.[29] These statutes should be interpreted in light of its purpose stated in § 8501:

> The purpose of this sub-chapter is to create and maintain an accurate efficient criminal justice information system in Delaware consistent with this chapter

and applicable federal law, ... (while maintaining) the right of individuals to be free from *improper* and *unwarranted* intrusion into their privacy.[30]

The State does not allege nor is there any indication that the News Journal wants this information for an improper purpose. To the contrary, the News Journal has demonstrated that the information is going to be used to study the criminal justice system to show the public that inner workings of the justice system. It is clear from the evidence presented that the News Journal has made substantial attempts to eliminate its request for data that can arguably be used to re-identify individuals. So, it must be concluded that the News Journal has no desire or intention to invade individuals privacy. The News Journal plans to do investigatory stories to provide the public with insight to any possible deficiencies of this system.[31] The equal administration of justice is fundamental. The public's confidence in the justice system has been long understood to be essential for the system to work properly. These goals can only be furthered by accountability of our public officials. This is one of the goals that the FOIA laws

---

**29.** Note that Chapter 85 deals specifically with State Bureau of Identification and Chapter 86 deals specifically with DELJIS; however, § 8604 states that: "The Board shall insure that the State Bureau of Identification and all other criminal justice agencies collecting, storing or disseminating criminal history record information and other information concerning crimes and offenders comply with this chapter and Chapter 85 of this title."

**30.** 11 *Del. C.* § 8501(a); *see also* 11 *Del. C.* § 8601. Also, in the purpose section DELJIS is tasked with "prohibiting improper dissemination of such information." *Id.* at § 8501(b)(5). DELJIS is statutorily prohibited from releasing information if that release is improper; consequently, this action for declaratory judgment is proper even though DELJIS made an agreement to release the data. Since, if DELJIS was not authorized to

release the data it had no power to agree to the release. Although, for the reasons set forth in this opinion this Court ultimately decides the release is in fact proper, DELJIS properly acted as a gatekeeper to this sensitive data by bringing this suit. Nevertheless, in the future DELJIS should decline to make agreements to turn over data if it is uncertain about whether the dissemination is proper.

**31.** This Court does not fear, nor should any public body fear, the probing effect of this type of investigatory news reporting. No public system works perfectly all the time; however, as a public servant, perfection in the administration of the law is something for which we all should strive. Therefore, if the News Journal highlights any shortcomings in our justice system this should only serve to further our resolve to uniformly administer justice.

were enacted to ensure. The News Journal through its investigatory reports is attempting to publicly study the effectiveness of Delaware's criminal justice system. After establishing that the News Journal's purpose is not improper, next the purpose of this chapter contemplates an inquire into whether there is any "unwarranted intrusion" into individual privacy. Given the decision of this Court, under this statute the News Journal is not completely prohibited from receiving the data because they do not plan to use the information improperly and there is no showing of an unwarranted invasion of privacy.

However, once it is determined that under the Chapter's purpose dissemination of the criminal records is not prohibited, the statute does distinguish between groups of requesters and only allows certain requesters to have access to specific parts of the criminal history data. This distinction between groups of requesters is highlighted in 11 *Del. C.* § 8513 which specifically deals with dissemination of criminal history information. Section 8513 provides, in pertinent part:

"(b) Upon application, the Bureau shall, ... furnish information pertaining to the identification and criminal history of any person or persons of whom the Bureau has record, provided that the requesting agency or individual submits to a reasonable procedure established by standards set forth the Superintendent of the State Police to identify the person whose record is sought. These provision shall apply to dissemination of criminal history record information to:

(1) Individuals and public bodies for any purpose authorized by Delaware state statute ... [and];

. . . .

(3) Individuals and *agencies for express purpose of research,* evaluative or statistical activities pursuant to a specific agreement with a criminal justice agency. Said agency shall embody a user agreement prescribed in § 8512 of this title;

. . . .

(c) Upon application the Bureau may, based upon the availability of resources and priorities set by the State Police, furnish information pertaining to identification and conviction data of any person or persons of whom the Bureau has record, provided that the requesting agency or individual submits to reasonable procedure .... These provisions shall apply to the dissemination of conviction data to:

. . . .

(2) Members of the *news media,* provided that the use of conviction data shall be limited to the purpose for which it was given, and the requesting media or news agency pays a reasonable fee ...." [32]

It is apparent that the statute is drawing a distinction between agencies that want access to criminal records purely for research and statistical study and the news media. In Judge Alford's previous decision in this case she also acknowledges this distinction.[33] After a plain reading of the statute this Court is convinced that the news media only can have access to convic-

---

**32.** 11 *Del. C.* § 8513 (emphasis added).

**33.** *Gannett v. Del. Criminal Justice Info. System,* 768 A.2d 508, 512 (Del.Super.1999) (stating "For purpose of this case it is important to note that § 8513 draws a clear distinction between criminal history (which includes arrest information) and conviction data. Also implicated here is the apparent distinction between research agencies and members of the news media.").

tion data. Conviction data is defined in the statute as

[A]ny criminal history record information relating to an arrest which has led to a conviction or other disposition adverse to the subject. 'Conviction or other disposition adverse to the subject' means any disposition of charges, except a decision not to prosecute, a dismissal or acquittal; provided, however, that a dismissal entered after a period of probation, suspension or deferral of sentence shall be considered a disposition adverse to the subject.[34]

Consequently, this Court has determined that DELJIS is not statutorily permitted to provide the News Journal with the non-conviction data that it requested, but this Chapter does not in any other way limit the News Journal's request.

### D. *Conclusion as to the Dissemination of the Requested Data under FOIA and Chapter 85*

If this Court were to deny access to these records absent a demonstrated privacy interest it would be in essence creating a "DELJIS record" exception to disclosure under FOIA that is not evident in the statutory language. Creating statutory exceptions is something that is in the purview of the legislature not this Court. The legislature recently has expressed great interest in the FOIA laws and has quickly changed the laws in response changing needs.[35] Therefore, if the State determines that the relevant statute lacks clarity, then it should properly seek legislative change in the law. Thus, given the current statutory language this Court has determined that except for a few discrete

fields of data that dissemination of the information to the News Journal is proper.

### E. *User Agreement*

Although this Court finds it proper to release the requested data to the New Journal, the News Journal should sign a user agreement. To further ensure security and confidentiality of data or information disseminated by DELJIS, Chapter 85 authorizes DELJIS to require an agency or an individual that is receiving criminal records to sign a user agreement.[36] Furthermore, the News Journal has already expressed a willingness to sign such an agreement. Under the statute, the user agreement will limit the News Journal's use of the data to the purpose for which it was given.[37] The user agreement will ensure against any possibility of misuse of the information, and the agreement is especially important considering the fact that the News Journal may receive information in the future that could combined with the data currently requested.

### IV. *Conclusion*

For the foregoing reasons declaratory judgment is denied in part. However, while the News Journal can receive the requested data from DELJIS it will not be permitted to receive arrest zip codes, grids or any other geographic information; non-conviction data, data relating to minors if requested, nor can the News Journal receive information which would allow for the identification of police officers. It should be noted that this Court is ruling on the narrow issue for which the evidentiary hearing was held; thus, this Court is not resolving the issue of attorneys fees so

---

**34.** 11 *Del. C.* § 8502(9).

**35.** In response to the threat of terrorism, the legislature enacted changes in FOIA regarding the disclosure of certain building plans.

**36.** *Id.* at § 8514.

**37.** *Id.*

if the parties want to pursue this issue a hearing will need to be scheduled.

**IT IS SO ORDERED.**